FRANKS, Appellant,

v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION, Appellee.

[Cite as *Franks v. Ohio Dept. of Rehab. & Corr.*, 195 Ohio App.3d 114, 2011-Ohio-2048.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 10AP–770.

Decided April 28, 2011.

Swope and Swope and Richard F. Swope, for appellant.

Michael DeWine, Attorney General, and Amy S. Brown and Temeka M. Higgins, for appellee.

CONNOR, Judge.

{¶ 1} Plaintiff-appellant, Jerry Franks ("appellant"), appeals the decision of the Court of Claims of Ohio granting judgment on the pleadings in favor of defendant-appellee, the Ohio Department of Rehabilitation and Correction ("ODRC"). For the following reasons, we reverse.

{¶ 2} Appellant is an inmate at the London Correctional Institution ("LCI") pursuant to R.C. 5120.16. Appellant alleges that he has a diagnosis of Crohn's disease, suffers from severe muscle spasms, and undergoes chemotherapy. Ac-

cording to appellant, these conditions make it difficult for him to climb stairs. On May 5, 2009, appellant was moved from a first-floor cell to a third-floor cell. At the time, he apparently made clear to prison staff that he had difficulties with stairs. On May 6, 2009, he visited the infirmary to secure a medical restriction that would require him to be housed in a cell on the first floor. He was examined by a nurse, who scheduled him to see a doctor on May 9, 2009. Before appellant was seen by a doctor, however, he fell while attempting to negotiate stairs.

{¶ 3} As a result, appellant filed a complaint against ODRC. He alleges that ODRC has a policy under which a nurse may issue temporary medical restrictions to an inmate before he can be seen by a doctor. He also alleges that his difficulty with stairs was obvious to any and all prison staff, and his medical conditions were well documented in his medical file. In appellant's complaint, he presents a claim alleging that ODRC had failed to accommodate his disability in violation of Title II of the Americans with Disabilities Act ("ADA"). He also presents allegations of negligence. The parties dispute whether the alleged negligence presents a medical claim, under R.C. 2305.113, or alternatively, whether it is a claim for common-law negligence.

{¶ 4} In response to appellant's complaint, ODRC filed a motion to dismiss under Civ.R. 12(B)(6). Appellant opposed the motion, which the trial court denied. As a result, ODRC filed an answer and then a motion for judgment on the pleadings pursuant to Civ.R. 12(C). Appellant opposed the motion, which the trial court granted. Appellant has timely appealed and presents the following assignment of error:

*Assignment of Error No. 1:*

The trial court erred in sustaining defendant-appellee's motion for judgment on the pleadings.

{¶ 5} Under Civ.R. 12(C), a party may file a motion for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial." When presented with such a motion, a court must construe all the material allegations of the complaint, in addition to any reasonable inferences to be drawn therefrom, as true and in favor of the nonmovant. *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 165, 63 O.O.2d 262, 297 N.E.2d 113, citing 2A Moore's Federal Practice 2342, Paragraph 12.15; 5 Federal Practice and Procedure, Wright and Miller, Section 1368. A motion for judgment on the pleadings tests the allegations of the complaint and presents questions of law. Id. at 166, citing *Conant v. Johnson* (1964), 1 Ohio App.2d 133, 30 O.O.2d 157, 204 N.E.2d 100. Therefore, appellate review of a judgment granted on the pleadings is de novo. See *Abrams v. Fuerst*, 5th Dist. No. 10–CA–146, 2011-Ohio-1641, 2011 WL 1233297, ¶ 23.

{¶ 6} In the instant matter, the trial court reviewed appellant's complaint and issued three findings. First, it specifically held that appellant had asserted a medical claim because he had been examined by a nurse, who declined to issue a medical restriction. It then generally held the following: to the extent that common-law negligence had been alleged, dismissal was proper because of discretionary immunity; and to the extent that ADA violations had been alleged, dismissal was proper because appellant had failed to set forth sufficient allegations. Appellant challenges each of these findings in this appeal, which we will address in turn.

{¶ 7} Civ.R. 10(D)(2) requires a medical claim, as defined in R.C. 2305.113, to be accompanied by an affidavit of merit. *Fletcher v. Univ. Hosps. of Cleveland*, 120 Ohio St.3d 167, 2008-Ohio-5379, 897 N.E.2d 147, ¶ 5. R.C. 2305.113(E)(3) defines a medical claim as follows:

[A]ny claim that is asserted in any civil action against a physician, podiatrist, hospital, home, or residential facility, against any employee or agent of a physician, podiatrist, hospital, home, or residential facility, or against a licensed practical nurse, registered nurse, advanced practice nurse, physical therapist, physician assistant, emergency medical technician-basic, emergency medical technician-intermediate, or emergency medical technician-paramedic, and that arises out of the medical diagnosis, care, or treatment of any person.

{¶ 8} In *Estate of Stevic v. Bio–Medical Application of Ohio, Inc.*, 121 Ohio St.3d 488, 2009-Ohio-1525, 905 N.E.2d 635, the Supreme Court of Ohio considered a case presenting procedural circumstances similar to those presented herein. In that case, the trial court granted judgment on the pleadings in favor of a dialysis center, without explanation. Id. at ¶ 5. The Fifth District Court of Appeals reversed and remanded after finding that it was unclear whether the complaint alleged a medical claim under R.C. 2305.113. Id. at ¶ 6. Upon accepting discretionary jurisdiction, the Supreme Court of Ohio held that a medical claim must both (1) arise out of the medical diagnosis, care, or treatment and (2) be asserted against one of the statutorily enumerated medical providers. Id. at syllabus. More specifically, the court provided:

[B]ecause Stevic's complaint did not clearly indicate whether any of her claims were asserted against medical providers enumerated in R.C. 2305.113(E), the trial court's judgment on the pleadings in favor of Bio–Medical was premature. Remand is appropriate because further proceedings in the trial court are required to determine whether Stevic's complaint alleges a medical claim within the purview of R.C. 2305.113.

Id. at ¶ 20; see also *Eastley v. Volkman*, 4th Dist. No. 09CA3308, 2010-Ohio-4771, 2010 WL 3835666, ¶ 4 ("because the estate did not allege that [the defendant] qualified as one of the enumerated medical providers in R.C. 2305.113(E)(3), its

ordinary negligence claim against her does not qualify as a 'medical claim' under that section"); see also *Evans v. Hanger Prosthetics & Orthotics, Inc.* (N.D.Ohio 2010), 735 F.Supp.2d 785, 791 ("While the claims Evans asserts against Underwood and Yanke relate to medical treatment, prosthetists are not one of the medical providers enumerated in the statute"). Therefore, to constitute a medical claim within the statutory definition, a plaintiff must allege proper content against a proper defendant.

{¶ 9} Our court has previously analyzed whether ODRC could be considered a "hospital" under the statutory definition set forth in former R.C. 2305.11(D)(1). See *Johnson v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 06AP–196, 2006-Ohio-6432, 2006 WL 3517998.[1] In *Johnson*, the trial court granted summary judgment in favor of ODRC after finding it could be considered a hospital under the statutory definition. Id. at ¶ 8. Upon review, our court held that Civ.R. 56 imposed the obligation upon ODRC, as the movant, to provide evidence demonstrating it was a hospital under the statute. Id. at ¶ 18. After finding that ODRC had failed to present any evidence on the issue, we reversed the summary judgment and remanded the matter for further proceedings. Id. at ¶ 18, 20.

{¶ 10} In the instant matter, the pleadings shed no light on whether ODRC is one of the medical providers enumerated in R.C. 2305.113(E). While the complaint makes reference to a nurse, ODRC is the only named defendant in this matter. Therefore, it is the only entity against which claims, medical or otherwise, have been asserted. Accordingly, because appellant's complaint does not allege that ODRC is a statutorily enumerated medical provider under R.C. 2305.113(E) in its relation to appellant, it was premature for the trial court to conclude that appellant has asserted a medical claim and grant judgment on such a claim. See *Estate of Stevic*, 121 Ohio St.3d 488, 2009-Ohio-1525, 905 N.E.2d 635, at ¶ 20. To this extent, the trial court erred.

■ {¶ 11} Aside from the issue of whether appellant has asserted a medical claim, it is clear that he has alleged negligence. ODRC argues that it is entitled to judgment on the basis of discretionary immunity. We now turn to this issue.

■ {¶ 12} Because appellant has alleged that ODRC was negligent, he was required to demonstrate the existence of a duty, a breach of that duty, and an injury proximately caused by the breach. *Menifee v. Ohio Welding Prods., Inc.* (1984), 15 Ohio St.3d 75, 77, 15 OBR 179, 472 N.E.2d 707. In regard to the custodial relationship between the state and its prisoners, the state owes a common-law duty of reasonable care and protection from unreasonable risks.

---

1. The statutes at issue in *Johnson,* former R.C. 2305.11(D)(3) and 2305.11(D)(1), defined the terms "medical claim" and "hospital" in substantially the same manner as those terms are defined in R.C. 2305.113(E)(3) and 2305.113(E)(1) respectively.

*McCoy v. Engle* (1987), 42 Ohio App.3d 204, 207, 537 N.E.2d 665. Indeed, the relationship between a "jailer and [an] inmate does not expand or heighten the duty of ordinary reasonable care." *Woods v. Ohio Dept. of Rehab. & Corr.* (1998), 130 Ohio App.3d 742, 745, 721 N.E.2d 143. "Reasonable care" is defined as the degree of caution and foresight that an ordinarily prudent person would employ in similar circumstances. Id. at 745.

{¶ 13} The extent of the duty owed to a plaintiff necessarily depends upon the circumstances of a case and the foreseeability of injury. Id., citing *Jeffers v. Olexo* (1989), 43 Ohio St.3d 140, 539 N.E.2d 614, and *Clemets v. Heston* (1985), 20 Ohio App.3d 132, 20 OBR 166, 485 N.E.2d 287. "However, the state is not an insurer of inmate safety and owes the duty of ordinary care only to inmates who are foreseeably at risk." Id., citing *McAfee v. Overberg* (Ct.Cl.1977), 51 Ohio Misc. 86, 5 O.O.3d 345, 367 N.E.2d 942.

{¶ 14} Under the judicially created doctrine of discretionary immunity, ODRC is generally immune from tort liability for decisions relating to policies and procedures. *Hughes v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 09AP–1052, 2010-Ohio-4736, 2010 WL 3820904, ¶ 16; see also *Howe v. Jackson Twp. Bd. of Trustees* (1990), 67 Ohio App.3d 159, 162, 586 N.E.2d 217. Indeed, " 'the state cannot be sued for its legislative or judicial functions or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion.' " *Hughes,* quoting *Reynolds v. State* (1984), 14 Ohio St.3d 68, 14 OBR 506, 471 N.E.2d 776. Generally, discretionary immunity has been applied to policies and procedures, which preserve internal order and maintain institutional security. *Hughes* at ¶ 17, citing *Bell v. Wolfish* (1979), 441 U.S. 520, 547–548, 99 S.Ct. 1861, 60 L.Ed.2d 447.

{¶ 15} In *Bugh v. Grafton Correctional Inst.,* 10th Dist. No. 06AP–454, 2006-Ohio-6641, 2006 WL 3703357, our court considered whether decisions made by personnel at a correctional institution should be afforded discretionary immunity. In that case, an inmate alleged that he needed special footwear due to arthritis and injuries to his feet. Id. at ¶ 2. He filed suit against the correctional institution and alleged, that "(1) defendant was aware of plaintiff's footwear needs; (2) defendant had a duty to provide plaintiff with medically prescribed footwear; [and] (3) defendant delayed procuring medically prescribed footwear due to ineffectual and inefficient execution of his requests, which included requiring plaintiff to travel to unnecessary medical appointments." Id. The trial court granted summary judgment to the correctional institution after finding, inter alia, that the institution's decision to transport the inmate for medical care and to provide special boots instead of surgery was characterized by a high degree of judgment or discretion. Id. at ¶ 5. After reaching this finding, the trial

court concluded that the institution's decisions were immune from suit. Id. We reversed after finding as follows:

> [W]hat is at issue is whether defendant breached a duty to plaintiff when procurement of plaintiff's special footwear was delayed. [*Reynolds,* at paragraph one of the syllabus.] (holding, in part, that "once the decision has been made to engage in a certain activity or function, the state may be held liable, in the same manner as private parties, for the negligence of the actions of its employees and agents in the performance of such activities").

Id. at ¶ 29.

{¶ 16} We find *Bugh* to be directive. According to the pleadings, appellant's physical limitations were obviously apparent upon a casual observation of his stature and appearance. Further, his medical conditions and restrictions were well documented in his medical file. As soon as appellant was informed that he had been reassigned to a third-floor cell, he notified prison staff that he could not be housed in a cell above the first floor. He also presented to a nurse to obtain a first-floor medical restriction. The nurse refused to issue the restriction and instead scheduled appellant to see a doctor three days later. By engaging in the activities of reassigning appellant and refusing to issue a first-floor restriction, "the state may be held liable, in the same manner as private parties." Id., 2006-Ohio-6641, 2006 WL 3703357, ¶ 27, quoting *Reynolds,* 14 Ohio St.3d 68, 14 OBR 506, 471 N.E.2d 776, paragraph one of the syllabus. Further, there is no indication that these decisions were made to preserve order or maintain security. For these reasons, we refuse to extend the judicially created doctrine of discretionary immunity to the circumstances of this matter. The trial court erred when it held that ODRC was afforded discretionary immunity from liability.

{¶ 17} Lastly, we turn to the trial court's dismissal of appellant's ADA claim. To present such a claim, a prisoner must allege " '(1) that he is a qualified individual with a disability; (2) that defendants are subject to the ADA; and (3) that plaintiff was denied the opportunity to participate or benefit from defendants' services, programs, or activities or was otherwise discriminated against by defendants, by reason of plaintiff's disability.' " (Citations omitted.) *Thomson v. Ohio Dept. of Rehab. & Corr.,* 10th Dist. No. 09AP–782, 2010-Ohio-416, 2010 WL 438138, ¶ 26.

{¶ 18} In this matter, the trial court concluded that appellant's complaint failed to set forth allegations regarding the first and third elements of his ADA claim. Upon our review, we disagree.

{¶ 19} Under the ADA, a "qualified individual with a disability" is " 'an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transporta-

tion barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.'" *United States v. Georgia* (2006), 546 U.S. 151, 153–154, 126 S.Ct. 877, 163 L.Ed.2d 650, quoting Section 12131(2), Title 42 U.S.Code. Further, a "disability" is "a physical or mental impairment that substantially limits one or more major life activities" of the individual. Section 12102(1)(A), Title 42, U.S.Code. "Major life activities" include, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." Section 12102(2)(A), Title 42, U.S.Code.

{¶ 20} With regard to appellant's ADA claim, we find direction in *Kiman v. New Hampshire Dept. of Corr.* (C.A.1, 2006), 451 F.3d 274. In *Kiman,* upon being examined by a doctor, a prison inmate displayed muscle atrophy and fasciculation (involuntary contractions and twitching). Id. at 277. He experienced intermittent pain and severe muscle cramping. Id. He submitted various requests to prison personnel, including a request for a first-floor cell assignment. Id. at 289. This request was not accommodated. Id. Eventually, the inmate was diagnosed as having amyotrophic lateral sclerosis ("ALS" or "Lou Gehrig's Disease"). Id. at 276. Based upon these circumstances, he filed suit against the New Hampshire Department of Corrections and various individuals and alleged that they had failed to properly treat his disease and had failed to reasonably accommodate his disability. Id. The district court granted summary judgment in favor of the defendants, which the circuit court reversed. The circuit court noted:

> Kiman has presented evidence that he informed the defendants of the serious nature of his disability and they had acknowledged, by issuing the bottom bunk pass and cane pass, that Kiman had mobility problems that required certain accommodations. Yet, according to Kiman's deposition, corrections officers nonetheless failed to respond to his request for a lower tier or his complaint that he was being kept on a top bunk. This presents an issue of fact regarding whether the corrections officers failed to provide him with these reasonable accommodations.

Id. at 289–290.

{¶ 21} As *Kiman* relates herein, appellant was not required to present evidence demonstrating these circumstances at this stage in the proceedings. Rather, he needed to present only allegations, which would permit reasonable inferences. As is demonstrated by our previous recitation of the allegations raised herein, appellant has presented sufficient allegations. The trial court

erred when it granted judgment on the pleadings and dismissed appellant's ADA claim.

{¶ 22} Having found merit to the arguments advanced by appellant, we sustain appellant's sole assignment of error. Accordingly, we reverse the judgment granted by the Court of Claims of Ohio in favor of ODRC and remand this matter for further proceedings in accordance with law and consistent with this decision.

Judgment reversed
and cause remanded.

BRYANT, P.J., and TYACK, J., concur.

