[Cite as *Franks v. Ohio Dept. of Rehab. & Corr.*, 2012-Ohio-3857.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

JERRY FRANKS

    Plaintiff

    v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION

    Defendant

Case No. 2009-07415

Judge Joseph T. Clark
Magistrate Matthew C. Rambo

DECISION

{¶ 1} On January 23, 2012, defendant filed a motion for summary judgment pursuant to Civ.R. 56(B). On February 22, 2012, plaintiff filed a response. On February 24, 2012, defendant filed supplemental authority in support of its motion. Defendant's motion is now before the court for a non-oral hearing pursuant to L.C.C.R. 4(D).

{¶ 2} Civ.R. 56(C) states, in part, as follows:

{¶ 3} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to

have the evidence or stipulation construed most strongly in the party's favor." *See also Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317 (1977).

{¶ 4} At all times relevant, plaintiff was an inmate in the custody and control of defendant at the London Correctional Institution (LoCI).  Plaintiff alleges that on May 5, 2009, he was moved from a cell on the lower level in housing unit D-1 to a cell on the third floor in unit D-4.  Plaintiff alleges that he suffers from Crohn's disease and was undergoing chemotherapy.  He alleges that he visited the infirmary on May 6, 2009, to secure a medical restriction that would require him to be housed in a cell where he would not have to use stairs.  Plaintiff alleges that instead of issuing him a temporary medical restriction, as permitted pursuant to defendant's policy, the nurse who examined him in the infirmary scheduled him to see a doctor on May 9, 2009.  Plaintiff alleges that before he saw the doctor he fell while using the stairs and was severely injured.

{¶ 5} Plaintiff asserts that his condition constitutes a permanent disability and that, as such, defendant had a duty to immediately grant him a medical restriction. Plaintiff further asserts that defendant violated the Americans with Disabilities Act (ADA) by not accommodating his permanent disability.

{¶ 6} On July 16, 2010, the court granted judgment on the pleadings in favor of defendant.   On April 28, 2011, the Tenth District Court of Appeals reversed and remanded this case.  The court of appeals held: that the pleadings do not establish that defendant is a medical provider under R.C. 2305.113(E) or that the nurse mentioned in the complaint is an employee of defendant, and therefore plaintiff was not required to file an affidavit of merit pursuant to Civ.R. 10(D)(2); that defendant is not entitled to discretionary immunity for the decision not to issue plaintiff a lower level restriction because it was not a decision made to preserve order or security within LoCI; and that plaintiff presented sufficient allegations regarding his ADA claim at that stage of the

proceedings to avoid dismissal. *Franks v. Ohio Dept. of Rehab. & Corr.*, 195 Ohio App.3d 114, 2011-Ohio-2048 (10th Dist.).

{¶ 7} In its motion for summary judgment, defendant argues that all medical staff providing care to plaintiff at all times relevant were employees of defendant, that the care they provided met the accepted standard of medical care and treatment, and that plaintiff cannot demonstrate that defendant failed to comply with the mandates of the ADA.

{¶ 8} In support of its motion, defendant provided the affidavits of J. Noble and Kristine Rumer, R.N., N.P. With respect to plaintiff's complaints regarding the issuance of a medical restriction, Rumer states in her affidavit:

{¶ 9} "1. I have personal knowledge of and I am competent to testify to the facts contained in this Affidavit. In preparing this affidavit, I personally viewed [plaintiff's] inmate records, which included his medical records.

{¶ 10} "2. I am currently employed by [defendant] as the Healthcare Administrator (HCA) at [LoCI]. I have been employed with the state of Ohio since July 24, 2006. I was licensed as a Licensed Practical Nurse (LPN) in the state of Ohio on August 18, 2003 * * *. I have been a Registered Nurse (RN) in the state of Ohio since January 4, 2006 * * *. I have also been a Certified Nurse Practitioner (NP) in the state of Ohio since November 17, 2011 * * *.

{¶ 11} "3. Through my employment at LoCI, I have personal knowledge of [defendant's] and LoCI rules, regulations, protocols, policies and procedures regarding inmate medical diagnosis, treatment and care, including medical restrictions.

{¶ 12} "4. [Defendant] is required to provide medical services to inmates pursuant to R.C. 5120.58 and O.A.C. 5120-9-60(A). The medical staff - including nurses and doctors - who provide medical services to inmates at LoCI are either employed by [defendant] or working pursuant to a personal services contract with [defendant].

{¶ 13} "5. [Defendant's] Protocol B-19 - a true and accurate copy of which is attached to this Affidavit as Exhibit 1 - governs the guidelines for the determination of inmate medical restrictions.  Protocol B-19 defines a medical restriction as a 'medical accommodation written by a physician or other advanced health care provider, used to address a serious medical need' and provides that '[m]edical restrictions are written only to address health problems that are likely to cause severe or life threatening consequences if the restriction is not implemented immediately.' Of particular importance to this case, Protocol B-19 does provide that '[n]urses may order temporary medical restrictions for inmates with short term, acute illnesses (i.e. flu, colds) for a maximum of three days.'

{¶ 14} "6. Plaintiff * * * was admitted into the custody of [defendant] on or about September 11, 1997, and was assigned to LoCI in London, Ohio at all times relevant to this lawsuit.  [Plaintiff's] inmate records reflect that he fell down the stairs the morning of May 9, 2009.

{¶ 15} "7. The Complaint in this lawsuit alleged that [plaintiff] was seen by a nurse in the prison infirmary on May 6, 2009, at which time he claims that his request for a bottom range medical restriction was denied, but that the nurse scheduled an appointment for him to see the doctor on May 9, 2009.  [Plaintiff's] inmate records do not reflect that he was seen on that date, but instead, reflect that prior to the alleged fall on May 9, 2009, [plaintiff]  was last seen by prison medical staff on April 28, 2009.

{¶ 16} "8. On May 9, 2009, prior to the time of the alleged fall, [plaintiff] had no active medical restrictions.  [Plaintiff] had had a previous medical restriction - which restricted him to standing no longer than thirty minutes at one time - that expired December 2, 2008.

{¶ 17} "9. According to his inmate records, at approximately 8:30 a.m. on May 9, 2009, [plaintiff] reported that he had fallen down the stairs and was unable to move.  Prison medical staff examined [plaintiff] in the stairwell but were unable to assess the

extent of his injuries because he refused to move. Thereafter, [plaintiff] was transported to the emergency room of the local hospital. Upon his return from the hospital, at approximately 12:20 p.m. on May 9, 2009, [plaintiff] was admitted to the prison infirmary. Thereafter, he was given first floor and bottom bunk medical restrictions for nine months.

{¶ 18} "10.                          Based on my training, education, experience and review of [plaintiff's] medical records, it is my opinion to a reasonable degree of medical certainty, that the nurse's decision not to issue [plaintiff] an immediate, temporary medical restriction, prior to his alleged May 9, 2009, fall, met the acceptable standards of medical care and treatment."

{¶ 19} With respect to plaintiff's ADA claim, Noble states in his affidavit:

{¶ 20} "1. I am currently employed by [defendant] as the Deputy Warden at [LoCI].

{¶ 21} "2. I have personal knowledge, and I am competent to testify to the facts contained in this Affidavit.

{¶ 22} "3. I have reviewed [plaintiff's] inmate records. Such records reflect that [plaintiff] reported that he fell down the stairs the morning of May 9, 2009.

{¶ 23} "4. The last medical restriction prior to [plaintiff's] fall, which restricted him to standing no longer than thirty minutes at one time, had expired on December 2, 2008. On the date of his fall, there were no current medical restrictions in [plaintiff's] file.

{¶ 24} "5. At no time during [plaintiff's] incarceration did he ever request an accommodation through the institutional [ADA] coordinator pursuant to Section E of [defendant's] policy 64-DCM-02. This policy is available for inmate review and, therefore, [plaintiff] should be familiar with it. A true and accurate copy of [defendant's] Policy 64-DCM-02 is attached hereto as Exhibit 1.

{¶ 25} "6. Since no ADA accommodation had been requested, and because there was no current medical restriction in place for [plaintiff] on the date of his fall, there was no reason for [defendant] to place [plaintiff] on the bottom range."

{¶ 26} In response to defendant's motion, plaintiff filed his own affidavit and copies of relevant documents from his inmate medical file. Plaintiff avers: that he suffers from Crohn's disease, severe muscle spasms, a "bad" left knee, neurological weakness, and underwent chemotherapy; that he has had several medical restrictions in the past, including lower range and lower bunk restrictions; that when he was moved on May 5, 2009 from a lower level to the third floor, he informed corrections officers and "those in control" of his various ailments and difficulty climbing stairs; that he was seen by a nurse on May 6, 2009, who decided not to grant his request for a restriction despite his ailments and difficulty climbing stairs; that he fell on May 9, 2009, because of his weakened condition; and that after his fall, he was issued the desired restrictions. The court notes that plaintiff also makes statements regarding the appropriateness of the treatment he received from the nurse on May 6, 2009, and regarding the knowledge and state of mind of corrections officers in the area. However, such statements do not comply with Civ.R. 56(E) and will not be considered by the court.

{¶ 27} A review of the medical records provided by plaintiff show no record of plaintiff visiting the LoCI infirmary on May 6, 2009, rather there is evidence that plaintiff visited the infirmary on April 28, 2009; however, the notes regarding that visit are indecipherable. (Plaintiff's Affidavit Exhibit 2, pg. 4.) Furthermore, there is no record of plaintiff having a medical restriction at the time of his fall, and no record that he requested an ADA accommodation.

{¶ 28} "Medical claim" is defined in R.C. 2305.113(E)(3) as "any claim that is asserted in any civil action against a physician, podiatrist, hospital, home, or residential facility, against any employee or agent of a physician, podiatrist, hospital, home, or residential facility, or against a licensed practical nurse, registered nurse, advanced

practice nurse, physical therapist, physician assistant, emergency medical technician-basic, emergency medical technician-intermediate, or emergency medical technician-paramedic, and that arises out of the medical diagnosis, care, or treatment of any person."

{¶ 29} Pursuant to R.C. 2743.02(A)(2), if plaintiff can prove that "an officer or employee [of the state], as defined in section 109.36 of the Revised Code, would have personal liability for the officer's or employee's acts or omissions but for the fact that the officer or employee has personal immunity under section 9.86 of the Revised Code, the state shall be held liable in the court of claims in any action that is timely filed * * *."

{¶ 30} R.C. 109.36 states, in part:

{¶ 31} "(A)(1) 'Officer or employee' means any of the following:

{¶ 32} "(a) A person who, at the time a cause of action against the person arises, is serving in an elected or appointed office or position with the state or is employed by the state.

{¶ 33} "(b) A person that, at the time a cause of action against the person, partnership, or corporation arises, is rendering medical, nursing, dental, podiatric, optometric, physical therapeutic, psychiatric, or psychological services pursuant to a personal services contract or purchased service contract with a department, agency, or institution of the state."

{¶ 34} The court finds that plaintiff's assertion that the unnamed nurse employed by defendant who allegedly examined him prior to the fall improperly denied him a medical restriction constitutes a medical claim. In order to establish liability for a such a claim, plaintiff must produce evidence to establish both the relevant standard of care and proximate cause. *See Bruni v. Tatsumi*, 46 Ohio St.2d 127 (1976). The appropriate standard of care must be proven by expert testimony which must construe what a medical professional of ordinary skill, care, and diligence in the same medical specialty would do in similar circumstances. *Id.* Plaintiff failed to provide any testimony

to dispute that of Rumer that the nurse in question acted within the accepted standard of care at all times.  Accordingly, plaintiff's claim based upon the denial of a temporary medical restriction must fail.

{¶ 35} With regard to plaintiff's claim pursuant to the ADA, "[t]o prove a violation of Title II of the ADA, a plaintiff must establish that: (1) he or she is a qualified individual with a disability; (2) the defendant is subject to the ADA; and (3) the plaintiff was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities or was otherwise discriminated against by the defendant, by reason of the plaintiff's disability."  *Wolfe v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 11AP-346, 2011-Ohio-6825, ¶16,  citing *Franks v. Ohio Dept. of Rehab. & Corr.,* 195 Ohio App. 3d 114, 2011-Ohio-2048 (10th Dist.), *Thomson v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 09AP-782, 2010-Ohio-416.  A defendant discriminates against a qualified individual with a disability if it denies him or her a reasonable accommodation.  *Wolfe* at ¶16.

{¶ 36} "Under the ADA, a 'qualified individual with a disability' is 'an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.' Further, a 'disability' is 'a physical or mental impairment that substantially limits one or more major life activities' of the individual.  'Major life activities include, 'caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.'"  (Citation omitted.) *Franks* at ¶19, quoting 42 U.S.C. 12131(2), 42 U.S.C. 12102(1)(A), 42 U.S.C. 12102(2)(A).

{¶ 37} Title II of the ADA applies to state prisons and prisoners, and prisons thus cannot use an inmate's disability as a reason to bar that inmate from participating in or receiving the benefits of recreation, medical services, or education and vocational

programs. *Pennsylvania Dept. of Corr. v. Yeskey*, 524 U.S. 206, 209-210 (1998). Therefore defendant is subject to the ADA. Furthermore, the court is satisfied that plaintiff is a "qualified individual with a disability" based upon the statements contained in his affidavit.

{¶ 38} However, the court is not persuaded that plaintiff was denied a reasonable accommodation for his disability. To the contrary, defendant has established that it has a process through which plaintiff may request an accommodation for his disability and an ADA coordinator tasked with reviewing such requests. Defendant provided affidavit testimony from Noble that plaintiff never requested an accommodation. Indeed, while plaintiff states in his affidavit that he informed several corrections officers of his medical condition, he does not state that he requested an accommodation other than the medical restriction. Accordingly, plaintiff's claim pursuant to Title II of the ADA must also fail.

{¶ 39} Based upon the foregoing, defendant's motion for summary judgment shall be granted and judgment shall be rendered in favor of defendant.



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

JERRY FRANKS

    Plaintiff

    v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION

    Defendant

Case No. 2009-07415

Judge Joseph T. Clark
Magistrate Matthew C. Rambo

## JUDGMENT ENTRY

{¶ 40} A non-oral hearing was conducted in this case upon defendant's motion for summary judgment. For the reasons set forth in the decision filed concurrently herewith, defendant's motion for summary judgment is GRANTED and judgment is rendered in favor of defendant. All future events are VACATED. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
JOSEPH T. CLARK

Case No. 2009-07415                    - 11 -                         ENTRY

Judge

cc:

Amy S. Brown                              Richard F. Swope
Assistant Attorney General                6480 East Main Street, Suite 102
150 East Gay Street, 18th Floor           Reynoldsburg, Ohio 43068
Columbus, Ohio 43215-3130

005
Filed April 23, 2012
To S.C. reporter August 24, 2012