[Cite as *Evans v. Dept. of Rehab. & Corr.*, 2018-Ohio-1035.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

William H. Evans, Jr.,                    :

    Plaintiff-Appellant,              :

                                                                    No. 16AP-767

v.                                        :        (Ct. of Cl. No. 2015-663)

Ohio Department of Rehabilitation and     :        (REGULAR CALENDAR)
Correction,

                                              :

    Defendant-Appellee.              :

                                              :

D E C I S I O N

Rendered on March 20, 2018

**On brief:** *William H. Evans, Jr.*, pro se.

**On brief:** *Michael DeWine*, Attorney General, and *Lindsey M. Grant*, for appellee.

APPEAL from the Court of Claims of Ohio

KLATT, J.

{¶ 1} Plaintiff-appellant, William H. Evans, Jr., appeals from a judgment of the Court of Claims of Ohio in favor of defendant-appellee, Ohio Department of Rehabilitation and Correction ("ODRC") following a bench trial. Because appellant's complaint stated a medical claim and appellant failed to present any evidence establishing the standard of care, breach of the standard of care, and that the breach was the proximate cause of his injury, we affirm.

**FACTS AND PROCEDURAL HISTORY**

{¶ 2} On July 15, 2015, Evans, an inmate at the Ross Correctional Institution ("RCI"), filed a complaint against ODRC. In the complaint, Evans alleged that he suffers

from a number of medical conditions including osteoporosis, Chronic Obstructive Pulmonary Disease ("COPD"), bipolar affective disorder, degenerative disc disease, and scoliosis of the spine, and that he has had a steel hip replacement and a history of fractures. He claimed that ODRC negligently failed to provide care or accommodate his hip replacement and feet problems, negligently cancelled inhalers and pain medication, negligently prescribed blood pressure medication, and negligently changed his medications from "self-carry" to nurse-dispensed requiring him to wait in a "pill call" line.

{¶ 3} Prior to trial, Evans asked that the trial court issue several subpoenas. On February 3, 2016, he filed requests for three subpoenas to be delivered at Ohio State University–Medical Center, 480 Medical Center Drive, Columbus, Ohio 43215 for Laura Phieffer, M.D. (surgeon); Makulic, M.D.; and Dr. Robert Alan Bornstein (vice dean/college of medicine). He also requested a subpoena to be issued to John DesMarais–medical director, Ohio Department of Rehabilitation and Correction, 770 West Broad St., Columbus, Ohio 43222. These witnesses were commanded to attend and give testimony at trial and to produce an "expert report." On March 25, 2016, Evans filed two additional requests for subpoenas. These subpoenas were addressed to Melissa Hawk–nurse practitioner, and Kelli Cardaras–nurse practitioner at RCI, P.O. Box 7010, 16149 SR 104, Chillicothe, Ohio 45601. Hawk and Cardaras were commanded to attend and give testimony at trial and to produce all medical records for Evans from 2005 through 2016.

{¶ 4} The trial court issued the six subpoenas on April 27, 2016. A notice of failure of service was returned for DeMarais as he no longer worked at the address provided by Evans. The returns of service for the Phieffer, Makulic, and Bornstein subpoenas showed that these subpoenas were all delivered by the same deputy sheriff on May 2, 2016 at 8:47 a.m., and indicated "Residential Service Security." According to the returns of service for the Hawk and Cardaras subpoenas, a deputy sheriff served the subpoenas on May 6, 2016 by residential service. ODRC filed a motion to quash the subpoenas duces tecum issued to Hawk, Cardaras, Bornstein, Phieffer, and Makulic.

{¶ 5} On May 11, 2016, Evans requested that the trial court issue two more subpoenas. These were addressed to Gary Mohr–director and John Doe–medical director at Ohio Department of Rehabilitation and Correction, 770 West Broad St., Columbus, Ohio 43222. The witnesses were commanded to attend and give testimony at trial and to produce an "expert report." The returns of service showed that the subpoenas were served

on May 13, 2016 at 11:40 a.m. by "Residential Service R(G Mitchell)."  ODRC filed a second motion to quash these subpoenas.

{¶ 6}   On May 25, 2017, the case proceeded to trial before a magistrate on the issue of liability and was held at RCI.  As an initial matter, the magistrate granted ODRC's two motions to quash.  Evans testified and submitted four exhibits for admission.  ODRC moved for dismissal pursuant to Civ.R. 41(B)(2), arguing that Evans' causes of action arose out of medical care, treatment, or diagnosis and, therefore, constituted a medical claim.  ODRC contended that Evans failed to offer the evidence required to support a medical malpractice claim and that it was entitled to judgment.

{¶ 7}   The magistrate recommended that the Civ.R. 41(B)(2) motion be granted and that the case be dismissed.  He found that medical skill and judgment was necessary to determine the proper course of action to treat Evans' feet and hip replacement and to determine which medicines should be prescribed and how they should be taken.  The magistrate rejected the argument that this fell within the "common knowledge" exception.  Because the claims focused on the quality of medical care rather than the complete absence of care, the magistrate concluded that Evans had presented a claim for medical malpractice and that he had failed to present any evidence regarding the standard of care or that the breach of the standard of care proximately caused injury to Evans.

{¶ 8}   Evans filed objections to the magistrate's decision.  He argued that the magistrate erred in quashing the subpoenas because the failure of proper service was the fault of the state and that magistrate erred in refusing to continue the trial.  He asserted that delivery of the subpoenas to security personnel did not constitute improper service.  Evans also alleged that the exhibits admitted at trial conclusively established medical facts and continued to dispute that his complaint constituted a medical malpractice claim.  He argued that because the only defendant was the "State," it could not be a medical malpractice claim but was really a claim in negligence for the violation of R.C. 2921.44(C)(2).

{¶ 9}   The trial court denied Evans' objections.  It noted that neither a transcript of the May 25, 2017 trial nor an affidavit of evidence was filed within 30 days of the filing of the objections as required by Civ.R. 53(D)(3)(b)(iii).  To the extent that Evans raised any factual objections, the trial court accepted the magistrate's factual findings.  It agreed with the magistrate that the complaint stated a claim for medical malpractice and that Evans

was required to present expert testimony to support his claim. Because Evans failed to do this, the trial court entered judgment in favor of ODRC.

{¶ 10} Evans appeals, assigning the following errors:

> [I.] TRIAL COURT ERRED IN FAILING TO APPLY O.R.C.§2921.44(C)(2), AS NEGLIGENTLY FAILING TO PROVIDE ADEQUATE MEDICAL ATTENTION, WHERE §2307.60(A) PROVIDES AS OF RIGHT A CIVIL ACTION FOR VIOLATION OF A CRIMINAL STATUTE.
>
> [II.] TRIAL COURT ERRED IN DESIGNATING THIS ACTION AS A "MEDICAL CLAIM".
>
> [III.] TRIAL COURT ERRED IN FAILING TO RENDER JUDGMENT IN FAVOR OF PLAINTIFF-APPELLANT EVANS AS A MATTER OF LAW.
>
> [IV.] TRIAL COURT ERRED AND VIOLATED DUE PROCESS OF LAW IN FAILING TO EITHER ORDER THAT ALL SUBPOENA'S WERE PROPERLY SERVED FOR TRIAL, AND ORDERING THAT ALL WITNESS'ES ATTEND, OR OTHERWISE TO RESCHEDULE THE TRIAL, VIOLATING THE 14th.AMENDMENT, U.S. CONSTITUTION AND OHIO CONSTITUTION ARTICLE I §16, VOIDING FUNDAMENTAL FAIRNESS, DUE PROCESS, AND EQUAL PROTECTION OF LAW.

(Sic passim.)

**LEGAL ANALYSIS**

{¶ 11} We will begin by addressing the fourth assignment of error which raises a pretrial issue. Evans argues that the trial court erred in granting ODRC's motions to quash the subpoenas and denying his request to continue the trial to secure the witnesses' attendance. He states that some of the witnesses were "treating physicians" and employees of ODRC. He contends that these facts gave him the right to have the witnesses present at trial and subject them to direct examination.

{¶ 12} Generally, an appellate court reviews a trial court's ruling to quash or enforce a subpoena under an abuse-of-discretion standard. *Bell v. Nichols*, 10th Dist. No. 10AP-1036, 2013-Ohio-2559, ¶ 36. Absent an abuse of discretion, an appellate court must affirm a trial court's disposition of discovery issues. *Bd. of Clark County Commrs. v. Newberry*, 2d Dist. No. 2002-CA-15, 2002-Ohio-6087, ¶ 13. The term "abuse of discretion" implies

that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 13} In its motion to quash, ODRC argued that the subpoenas should be quashed because (1) Evans failed to tender the required witness fees and mileage, (2) the subpoenas issued to Hawk and Cardaras were an impermissible substitution for discovery, (3) the subpoenas issued to Phieffer, Bornstein, and Makulic were improper attempts to force uncompensated individuals to create expert reports, and (4) none of the subpoenas were properly served as they were left with security at the witnesses' places of employment. In support of its motion, ODRC attached the affidavit of the investigator for RCI. He stated that the subpoenas for Hawk and Cardaras were left at the front security desk at RCI and that the subpoenas were neither handed nor read to Hawk or Cardaras by the Ross County Sheriff or a deputy sheriff.

{¶ 14} The second motion to quash the subpoenas for Mohr and John Doe raised these same arguments and two additional arguments. ODRC contended that the subpoenas should also be quashed because they were untimely and because the witnesses were not included in Evans' pretrial statement or discovery.

{¶ 15} Evans seemed to acknowledge in his memorandum in opposition that he did not remit any witness fees or mileage. Instead, he contended that witness fees were not required for subpoenas duces tecum and that witness fees should not apply to him as he earns only $6.00 a month.

{¶ 16} Civ.R. 45(B) provides in pertinent part:

> Service of a subpoena upon a person named therein shall be made by delivering a copy of the subpoena to the person, by reading it to him or her in person, by leaving it at the person's usual place of residence, or by placing a sealed envelope containing the subpoena in the United States mail as certified or express mail return receipt requested * * *, and by tendering to the person upon demand the fees for one day's attendance and the mileage allowed by law. * * * If the witness being subpoenaed resides outside the county in which the court is located, the fees for one day's attendance and mileage shall be tendered without demand.

{¶ 17} The failure to tender fees renders a subpoena defective. *A.O. Smith Corp. v. Perfection Corp.*, 10th Dist. No. 03AP-266, 2004-Ohio-4041, ¶ 26. A witness cannot be

compelled to appear and give testimony if the required fees are not advanced to the witness. *Id.*

{¶ 18} Evans is correct to the extent that the failure to tender witness fees does not affect the enforceability of the production of documents under the subpoena. *Trick v. Scherker*, 2d Dist. No. 26461, 2015-Ohio-2972, ¶ 19 (the failure to tender fees did not relate to request to produce documents in a subpoena duces tecum). But, a subpoena duces tecum may not be used as a substitute of discovery from a party. Civ.R. 45(A) provides:

> A subpoena may not be used to obtain the attendance of a party or the production of documents by a party in discovery. Rather, a party's attendance at a deposition may be obtained only by notice under Civ.R. 30, and documents or electronically stored information may be obtained from a party in discovery only pursuant to Civ.R. 34.

{¶ 19} In this case, Evans requested that Hawk and Cardaras, who were employees at RCI, produce all his medical records and files from 2005 through 2016 that are in the possession of ODRC. This request for documents should have been directed to ODRC pursuant to Civ.R. 34. Furthermore, R.C. 5120.21(C)(2) governs Evans' access to his prison medical records. That section provides:

> A separate medical record of every inmate in an institution governed by the department shall be compiled, maintained, and kept apart from and independently of any other record pertaining to the inmate. Upon the signed written request of the inmate to whom the record pertains together with the written request of either a licensed attorney at law or a licensed physician designated by the inmate, the department shall make the inmate's medical record available to the designated attorney or physician. The record may be inspected or copied by the inmate's designated attorney or physician.

There is nothing in the record to indicate that Evans complied with R.C. 5120.21(C)(2).

{¶ 20} With regard to subpoena duces tecum for Phieffer, Makulic, Bornstein, Mohr, and John Doe, medical director at ODRC, Evans requested that these witnesses produce an expert report as defined under Civ.R. 26(B) and Loc.R. 7(E) of the Court of Claims of Ohio, and also to produce all medical records of plaintiff, as in accordance with the "Request for Written Deposition and/or Interrogatories filed and dated in this case for Nov. 03, 2015." A demand to produce documents contemplates the production of documents already in existence, not the creation of new documents. Nothing in Civ.R. 45 authorizes a party to

request that a nonparty create a new document or report. In addition, Civ.R. 45(C)(3)(c) provides that a court may quash a subpoena issued to an expert witness if the subpoena

> [r]equires disclosure of a fact known or opinion held by an expert not retained or specially employed by any party in anticipation of litigation or preparation for trial as described by Civ.R. 26(B)(5), if the fact or opinion does not describe specific events or occurrences in dispute and results from study by that expert that was not made at the request of any party.

In his pretrial statement, Evans identified only Bornstein as an expert witness. However, there is nothing in the record that indicates that either ODRC or Evans retained him or any of the other witnesses as experts.

{¶ 21} Ultimately, our ability to review this assignment of error is hampered by two factors. First, no written decision on ODRC's motions to quash appears in the record. The magistrate's decision from the trial indicates that he orally granted the motions to quash at the commencement of trial without further explanation. Second, Evans failed to provide a transcript of the trial or an affidavit of evidence.

{¶ 22} Civ.R. 53(D)(3)(b)(iii) requires that a party who objects to a magistrate's decision to provide the trial court with a transcript of the proceeding before the magistrate or an affidavit of evidence. If the objecting party fails to submit either a transcript or affidavit, the trial court must accept the magistrate's factual findings and limit its review to the magistrate's legal conclusion. *Ross v. Cockburn*, 10th Dist. No. 07AP-967, 2008-Ohio-3522, ¶ 5; *Farmers Mkt. Drive-In Shopping Centers, Inc. v. Magana,* 10th Dist. No. 06AP-532, 2007-Ohio-2653, ¶ 27-28. As an appellate court, we can only consider whether the trial court correctly applied the law to the facts as set forth in the magistrate's decision. *Ross* at ¶ 6; *Magana* at ¶ 29.

{¶ 23} Without a transcript, we cannot know the substance of the evidence produced in support of or contrary to the motions to quash or the basis of the magistrate's ruling. We also do not know whether Evans requested a continuance of the trial or the reason the magistrate denied that request. Absent a transcript, we must presume the regularity of the proceedings below and affirm the trial court's decision. *Lee v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 06AP-625, 2006-Ohio-6658, ¶ 10, citing *Edwards v. Cardwell*, 10th Dist. No. 05AP-430, 2005-Ohio-6758, ¶ 4-6.

{¶ 24} We therefore overrule the fourth assignment of error.

{¶ 25} In the first assignment of error, Evans argues that the trial court erred when it failed to apply R.C. 2921.44(C)(2) to his case as R.C. 2307.60(A)(1) provides for a civil cause of action for a violation of a criminal statute. Neither the magistrate's decision nor the trial court's judgment entry overruling Evans' objections mention R.C. 2921.44(C)(2) or 2307.60(A)(1). Both the magistrate and trial court concluded that Evans had stated a claim for medical malpractice.

{¶ 26} R.C. 2307.60(A)(1) provides:

> Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law, may recover the costs of maintaining the civil action and attorney's fees if authorized by any provision of the Rules of Civil Procedure or another section of the Revised Code or under the common law of this state, and may recover punitive or exemplary damages if authorized by section 2315.21 or another section of the Revised Code.

{¶ 27} The Supreme Court of Ohio has held that the plain and unambiguous language of the above statute "creates a civil cause of action for damages resulting from any criminal act, unless otherwise prohibited by law." *Jacobson v. Kaforey*, 149 Ohio St.3d 398, 2016-Ohio-8434, ¶ 13. Therefore, it is possible for Evans to raise a violation of R.C. 2921.44(C)(2) as a civil cause of action.

{¶ 28} R.C. 2921.44, the dereliction of duty statute, makes it a misdemeanor of the second degree if an officer, having charge of a detention facility, negligently fails "to provide persons confined in the detention facility with adequate food, clothing, bedding, shelter, and medical attention." R.C. 2921.44(C)(2). It is unclear, however, that Evans actually raised a violation of R.C. 2921.44(C)(2) as a claim. The complaint does not cite either R.C. 2921.44(C)(2) or 2307.60(A)(1) and is consistent with one brought solely on the basis of the common law for medical malpractice.

{¶ 29} Evans states that in later filings he informed the trial court that he was presenting a negligence claim based on the duty owed to him pursuant to R.C. 2921.44(C)(2) to provide adequate medical attention, and not bringing a medical malpractice claim. He also contends that at trial he specifically argued the dereliction of duty statute was applicable. ODRC counters that the trial court based its decision that Evans presented a claim for medical malpractice on the evidence adduced at trial. It also argues that the court was required to look beyond the language used in the complaint and

examine the underlying nature of the claims. According to ODRC, Evans' claim concerned the quality of the medical care he received at RCI and that the trial court properly determined it was a cause of action for medical malpractice.

{¶ 30} The complaint does not make it clear that Evans was pursuing a statutory violation claim against ODRC. Also, without a transcript, we do not know whether Evans argued at trial that he was presenting a claim for a violation of R.C. 2921.44(C)(2). We must therefore presume the regularity of the proceedings and that the trial court did not err in failing to apply R.C. 2921.44(C)(2). The first assignment of error is overruled.

{¶ 31} In the second assignment of error, Evans argues that the trial court erred in designating this action as a medical claim. "Medical claim" is defined by R.C. 2305.113(E)(3) which provides, in pertinent part, as follows:

> "Medical claim" means any claim that is asserted in any civil action against a physician, podiatrist, hospital, home, or residential facility, against any employee or agent of a physician, podiatrist, hospital, home, or residential facility, or against a licensed practical nurse, registered nurse, advanced practice registered nurse, physical therapist, physician assistant, emergency medical technician-basic, emergency medical technician-intermediate, or emergency medical technician-paramedic, and that arises out of the medical diagnosis, care, or treatment of any person. "Medical claim" includes the following:
>
> (a) Derivative claims for relief that arise from the plan of care, medical diagnosis, or treatment of a person;
>
> (b) Claims that arise out of the plan of care, medical diagnosis, or treatment of any person and to which either of the following applies:
> (i) The claim results from acts or omissions in providing medical care.
>
> (ii) The claim results from the hiring, training, supervision, retention, or termination of caregivers providing medical diagnosis, care, or treatment.

{¶ 32} Evans argues that his claim cannot be a "medical claim" because ODRC is the named defendant, and ODRC is not included in R.C. 2305.113(E)(3) as an entity against whom a medical claim may be brought. He cites *Franks v. Ohio Dept. of Rehab. & Corr.,* 195 Ohio App.3d 114, 2011-Ohio-2048 (10th Dist.), and *Foster v. Ohio Dept. of Rehab.*

*Corr.*, 10th Dist. No. 12AP-503, 2013-Ohio-912, as support that negligence by a prison medical staff sounds in ordinary negligence and does not present a medical claim.

{¶ 33}   In *Franks*, an inmate with physical limitations was moved from a first floor cell to a third floor cell.  A nurse refused to provide him with a first floor medical restriction.  The inmate then fell down a flight of stairs.  We held that "it was premature for the trial court to conclude that appellant has asserted a medical claim" as the pleadings failed to establish that ODRC was one of the enumerated medical providers in R.C. 2305.113(E).  *Franks* at ¶ 10. We reversed the grant of summary judgment to ODRC.

{¶ 34}   In *Foster*, an inmate claimed that he suffered injury when he fell from the top bunk.  He alleged that ODRC personnel had forced him to sleep in a top bunk despite his health conditions.  He had been previously issued a temporary lower bunk restriction but a doctor employed by ODRC refused to reissue the restriction when the temporary one expired.   We noted that a medical examination as a precondition for a benefit was distinguishable from an examination for purposes of medical diagnosis, care, or treatment.  *Foster* at ¶ 34.  Because ODRC failed to provide evidence that the claim involved the medical diagnosis, care, or treatment of Foster, we reversed the grant of summary judgment.

{¶ 35}   Unlike *Franks* or *Foster*, the magistrate's decision that Evans presented a medical claim was based on the evidence produced at trial and not summary judgment.  Also, neither case establishes as a rule that a medical claim may not be brought against ODRC.  Although not enumerated in R.C. 2305.113(E) as a medical provider against whom a medical malpractice claim may be brought, ODRC's potential liability to Evans arises out of the alleged negligence of the medical staff at RCI in their medical diagnosis, care, or treatment of Evans.  *See Foy v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 16AP-723, 2017-Ohio-1065, ¶ 23.  After hearing the evidence at trial, the magistrate found the claims focused on the quality of the medical treatment provided at RCI.   According to the magistrate, Evans acknowledged at trial that he routinely received treatment, but failed to identify any harm suffered due to the inattention of RCI's medical staff.   Without a transcript, we must accept the magistrate's findings.  Like the trial court, we conclude that Evans presented a claim for medical malpractice.

{¶ 36} Evans also argues that his action is not a medical claim because his complaint alleged a violation of R.C. 2921.44.  Assuming arguendo that Evans did raise a civil cause of action for a violation of R.C. 2921.44, the trial court still did not err in designating his action

as a medical claim. Evans seems to argue that because he alleged the violation of a statutory duty that negligence per se applied and that his action could not be classified as a medical claim. We disagree. A medical claim involves "any claim" that is asserted in "any civil action" that arises from the plan of care, medical diagnosis, or treatment of a person. Here, Evans allegedly raised R.C. 2921.44(C)(2), which prohibits the negligent failure to provide adequate medical attention to an inmate. In order for the trial court to find that ODRC violated the statute, Evans would have to establish the appropriate plan of care or medical treatment for his various ailments and that the medical staff at RCI negligently failed provide it. This falls squarely within the definition of "medical claim."

{¶ 37} The second assignment of error is overruled.

{¶ 38} In the third assignment of error, Evans argues that the trial court erred in failing to render judgment in his favor. Evans contends that ODRC's admissions pursuant to Civ.R. 36 show that it had violated R.C. 2921.44(C)(2) and established negligence per se.

{¶ 39} In order to recover for medical malpractice, a plaintiff must prove: (1) the existence of a standard of care within the medical community; (2) the defendant's breach of that standard; and (3) proximate cause between the medical evidence and the plaintiff's injuries. *Adams v. Kurz*, 10th Dist. No. 09AP-1081, 2010-Ohio-2776, ¶ 11. A medical malpractice claimant must provide proof of the recognized standard of care in the medical community through expert testimony. *Bruni v. Tatsumi*, 46 Ohio St.2d 127, 131-32 (1976).

{¶ 40} Evans did not present any expert testimony at trial. Instead, Evans appears to rely on the admissions from ODRC that he entered into evidence. Contrary to his belief, however, the admissions do not establish that ODRC breached the standard of care or that it negligently failed to provide adequate medical attention. In the requests for admissions, Evans asked ODRC to admit that he had certain conditions such as bipolar affective disorder, degenerative disc disease, scoliosis, deformed feet with bilateral fracture history, COPD, artificial hip replacement, and osteoporosis. He also requested admissions that he had been prescribed at various times certain medications such as Rameron, Prozac, Lamictal, Ultram, Neurontin, albuterol, Q-Var, and Atrovent. ODRC did admit that the medical records for Evans included the "phrases" as listed above and that he had been prescribed the medications at various times and that some of the medications had been discontinued by medical personnel. There was no admission, however, that RCI medical

personnel failed to treat Evans for any of the conditions or that any of the medications that were discontinued were currently necessary to treat Evans.

{¶ 41} The magistrate found and the trial court agreed that medical skill and judgment was necessary to determine the proper course of treatment for Evans' deformed feet and hip replacement, to determine whether certain medication should or should not have been prescribed to Evans and to determine the appropriate method of ingesting medication for maximum effectiveness. The magistrate rejected any argument that "common knowledge" exception applied to the requirement for expert testimony.

{¶ 42} Because there is no transcript, we are unable to review the magistrate's finding that medical skill and judgment is necessary to treat each of the ailments that is the basis of the complaint and that Evans stated a claim for medical malpractice. We do know that Evans did not present any expert testimony to establish the standard of care, breach of that standard, and proximate cause. Without that expert testimony, Evans failed to prove his claim by a preponderance of the evidence and, therefore, the trial court did not err in rendering judgment for ODRC. The third assignment of error is overruled.

{¶ 43} For the foregoing reasons, the assignments of error are overruled, and we affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

TYACK and DORRIAN, JJ., concur.

————————