OPINION
{¶ 1} Plaintiff-appellant, Anthony J. Horton, appeals the Ohio Court of Claims' January 31, 2005 judgment, which adopted a magistrate's decision recommending judgment in favor of defendant-appellee, Ohio Department of Rehabilitation and Correction ("ODRC"). The trial court overruled appellant's objections to the magistrate's decision and adopted the magistrate's ruling as its own. The court found that ODRC was not negligent in its care of appellant and not liable for any alleged harm. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} On January 11, 2001, appellant filed a complaint in the Court of Claims, asserting two unrelated counts of negligence. Appellants' first cause of action alleged that he was injured while being transported to a work site. The second count stemmed from an incident during which he claimed he was stabbed or poked in the neck by a correctional officer ("CO"). Both events occurred while appellant was an inmate at the Lebanon Correctional Institution work camp.[1]
 {¶ 3} Pursuant to a March 23, 2001 entry, the court bifurcated the issues of liability and damages. On April 22, 2002, the matter of liability was tried before a magistrate, who heard testimony from both parties. On October 25, 2004, the magistrate filed a decision recommending judgment in favor of ODRC and dismissing both counts of appellant's complaint. The magistrate concluded that appellant had failed to prove negligence on the part of ODRC. Appellant filed timely objections to the decision, to which ODRC responded.
 {¶ 4} On January 31, 2005, the Court of Claims overruled appellant's objections, finding that the magistrate's decision was supported by the greater weight of the evidence and was in accord with the law. The court adopted the magistrate's decision, complete with the magistrate's findings of fact and conclusions of law, and entered judgment in favor of ODRC. Appellant now appeals the Court of Claims' judgment.
 {¶ 5} Appellant asserts four assignments of error for our review:
ASSIGNMENT OF ERROR NO. 1:
THE MAGISTRATE AND TRIAL JUDGE'S RULING REGARDING DEFENDANT-APPELLEE'S NEGLIGENCE RESULTING IN THE ACCIDENT IS CONTRARY TO THE LAW ESTABLISHED BY THE TENTH DISTRICT COURT OF APPEALS IN WOODS V. OHIO DEPT. OF REHAB. CORR. (1998), 130 OHIO APP.3D 742; AND WOODS V. OHIO DEPT. OF REHAB. CORR. (1999), 132 OHIO APP.3D 780.
ASSIGNMENT OF ERROR NO. 2:
THE MAGISTRATE AND TRIAL JUDGE ERRED IN FINDING THE OPERATOR WAS NOT GUILTY OF NEGLIGENCE IN OPERATING A TRUCK LOADED WITH FOUR INMATES PULLING A HAY WAGON OVER A FIFTY YEAR OLD CISTERN OR CESSPOOL SLAB, WHICH COLLAPSED WHEN THERE WAS OTHER AVAILABLE ACCESS TO THE BARN, VIOLATED THE STANDARD OF ORDINARY CARE.
ASSIGNMENT OF ERROR NO. 3:
THE DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, THE RECORD CLEARLY DEMONSTRATING THE VEHICLE WAS OPERATING OVER GRAVEL, PAVED HIGHWAY AND OTHER AREAS WITHOUT PROVIDING INMATES WITH SEAT RESTRAINTS, GRAB BARS OR OTHER SAFETY EQUIPMENT TO PROTECT AGAINST ACCIDENTALLY THROWING THEM ABOUT THE BACK OF THE TRUCK UPON SUDDEN STOP OR ACCIDENT.
ASSIGNMENT OF ERROR NO. 4:
THE DECISION AS TO THE INJURIES CAUSED BY CORRECTIONAL OFFICER LINDSEY CAUSED BY STABBING PLAINTIFF WITH A PEN OR KNIFE WAS CONTRARY TO LAW AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 6} Appellant's first three assignments of error are interrelated and will be addressed together. Essentially, appellant asserts that the judgment of the Court of Claims is against the manifest weight of the evidence and is contrary to this court's previous holdings in Woods v.Ohio Dept. of Rehab. Corr. (1998), 130 Ohio App.3d 742; and Woodsv. Ohio Dept. of Rehab. Corr. (1999), 132 Ohio App.3d 780.[2]
 {¶ 7} Judgments supported by some competent, credible evidence going to all essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, syllabus. This court, sitting as a "thirteenth juror," must weigh the evidence and determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed." State v.Thompkins (1997), 78 Ohio St.3d 380, 387, citing State v. Martin (1983),20 Ohio App.3d 172, 175. The credibility of witnesses is an issue primarily for the trier of fact, who stands in the best position to evaluate such matters. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77. Thus, if the evidence is susceptible to varied conclusions, this court must interpret it in a manner consistent with the verdict and judgment. Briscoe v. Ohio Dept. of Rehab. Corr., Franklin App. No. 02AP-1109, 2003-Ohio-3533, at ¶ 19.
 {¶ 8} Both counts of appellant's complaint allege that ODRC is liable under a theory of negligence. As with any claim based in negligence, the complaining party must prove by a preponderance of the evidence that the defendant breached a duty owed to him and that he sustained an injury proximately caused by the breach. Woods I, at 744, citing Strother v.Hutchinson (1981), 67 Ohio St.2d 282, 285. Here, the state is held to a common-law duty of reasonable and ordinary care and protection from unreasonable risks. McCoy v. Engle (1987), 42 Ohio App.3d 204, 207. Reasonable care is that degree of caution and foresight that an ordinarily prudent person would employ in similar circumstances. WoodsI, at 745. The custodial relationship between the state and its inmates does not heighten this duty of reasonable care; the state is not an insurer of inmate safety. Woods II, at 784. However, once the state becomes aware of a dangerous condition, it must take reasonable caution to avoid harm to an inmate. Harwell v. Grafton Correctional Inst.,
Franklin App. No. 04AP-1020, 2005-Ohio-1544, at ¶ 11. The inmate is also charged with the responsibility to use reasonable care to insure his or her own safety. Id.
 {¶ 9} Here, ODRC owed appellant the duty of transporting him to his workplace in a safe manner. The magistrate heard evidence regarding the incident from appellant and from Edwin Bradshaw, the farm coordinator who was driving the truck in which appellant was transported. The testimony revealed the following account.
 {¶ 10} As an inmate at the Lebanon Correctional Institution work camp, appellant was assigned to work at a dairy farm located across the road from the camp. On the day in question, appellant and three other inmates were being transported around the farm in a half-ton pickup truck. The inmates were to be taken to the hay barn where they would load hay from the barn into a hay wagon, which was being pulled by the truck.
 {¶ 11} The truck had been modified to accommodate passengers. The truck bed was enclosed with an aluminum camper shell supported by interior metal framework. Wooden planks had been added to each side of the truck bed, forming benches that ran parallel to the sides of the truck; a third bench was located at the front end of the truck parallel to the cab. All three benches were bolted to the floor of the truck. There were no safety belts or grab bars to hold the inmates in place in the case of unexpected movement or a sudden stop. However, Mr. Bradshaw testified that the inmates could hold on to the benches upon which they were sitting or grasp the interior framework of the camper shell for support. There is no indication that the inmates were handcuffed or otherwise restrained in their movements during transport.
 {¶ 12} Mr. Bradshaw was driving the inmates from the dairy barn toward the hay barn, intending to get as close to the barn door as possible so the inmates would not have to carry the hay very far. On the approach to the barn door, Mr. Bradshaw drove over a concrete slab, approximately 10 by 20 feet, which covered a cistern or a cesspool. Though he had driven the truck over the slab innumerable times in the past, on this occasion it suddenly collapsed and the right front tire of the truck dropped 12 to 18 inches into the hole.
 {¶ 13} Upon impact, appellant testified that he hit the top of the camper shell, hit his knees on the bottom of the truck bed, struck the back windshield of the cab with his shoulder, and landed in a pile with the other inmates in the front of the truck bed. Appellant further testified that he thought the truck was moving between 20 and 30 m.p.h. at the time it fell through the collapsed concrete. However, Mr. Bradshaw testified that he was driving 8 to 10 m.p.h. as he approached the barn door and had slowed to less than 5 m.p.h. at the time he began to cross the concrete slab. Mr. Bradshaw stated that the truck and hay wagon would sway on the gravel road if he drove much faster. After the incident, Mr. Bradshaw was able to remove the truck from the hole without causing any damage to the tire. At that time, appellant and one other inmate indicated that they wanted to go to the infirmary.
 {¶ 14} After listening to the evidence, the magistrate concluded that ODRC was not negligent because it had met its duty to safely transport the inmates while they performed their work. The magistrate noted that he found Mr. Bradshaw's testimony to be more credible than appellant's regarding the speed of the truck and the cause of the sudden jolt. The magistrate also found that ODRC, as the owner of the property, had no reason to know or predict that the concrete slab would suddenly collapse. The magistrate noted that Mr. Bradshaw testified that he had worked around and driven over the slab approximately three days a week for several years before the accident occurred. A property owner can only be found liable for known dangerous conditions or conditions that pose reasonably foreseeable dangers. Perry v. Eastgreen Realty Co. (1978),53 Ohio St.2d 51, 52. Furthermore, the magistrate concluded that appellant's case was distinguishable from the precedent this court set in the two Woods cases. Accordingly, the magistrate found in favor of ODRC, and the trial court approved and adopted that decision.
 {¶ 15} We find that there is competent, credible evidence to support the magistrate's decision. Appellant offers nothing but his speculation that the truck was driving 20 to 30 m.p.h. to refute Mr. Bradshaw's testimony that he was driving at a prudent speed as he approached the barn door. Nor is there any evidence from which one could conclude that it was reasonably foreseeable that a concrete slab — driven over for years without incident — would suddenly cave in. The magistrate and, ultimately, the trial court found Mr. Bradshaw's testimony to be more compelling. We must defer to that finding, as the weight to be given the evidence and the credibility of witnesses are determinations within the province of the fact finder. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 16} We further find that the trial court's decision is not contrary to our decisions in Woods I and Woods II. In Woods I, at 745, we held that ODRC was "negligent in failing to provide safety restraints to a prisoner while riding in a van * * * while restrained in handcuffs, a belly band and leg irons. Additionally, under the circumstances presented [riding on benches, while fully shackled but not restrained to the bench, in a van driving down a public thoroughfare], it was reasonably foreseeable that appellant would encounter a dangerous situation while physically restrained in the back of a van not equipped with safety restraints." The fact that appellant was restrained in handcuffs, a belly band, and leg irons was essential to our holding in Woods I. So restrained, a person has no ability whatsoever to look after his own safety by holding onto the bench during transport or upon a sudden jolt. Additionally, conditions on a public thoroughfare are more likely to lead to accidents and sudden stops, as the driver must account for the actions of other commuters.
 {¶ 17} Neither fact scenario, i.e., total restraints or public streets, applies to this matter. Appellant was not restrained in any way, but could hold onto the seat or the interior frame during transport, which may have prevented any injury when the truck tire abruptly fell through the concrete slab. Further, the truck was driving on a gravel road on the dairy farm at a slow rate of speed, making an injurious occurrence less likely.
 {¶ 18} The facts of this case similarly distinguish it from Woods II.
In Woods II, the van used to transport the inmates was not normally used to transport inmates. Instead, it was typically used to haul equipment. There were not enough seats to accommodate the number of inmates being transported. In Woods II, the appellant testified that, because all the seats were taken and the back of the van was crowded with people and equipment, he was forced to sit on a plastic milk crate. Id. at 785. The inmates were being transported on a public thoroughfare. The equipment van lacked any handholds to use if the van made a sudden movement. Additionally, the inmate had previously complained about the lack of proper seating in the cargo van. Id. at 786.
 {¶ 19} As in the first Woods case, the facts of Woods II were crucial to our holding that ODRC had failed to meet the minimum standard of care in transporting inmates. The van was not normally used for transporting inmates and was inadequately prepared for the task, a situation which the inmates had brought to the attention of their supervisors. It was reasonably foreseeable that an inmate would use the milk crate for a seat when nothing else was available. Further, it was reasonably foreseeable that the milk crate would not withstand the jolt of a sudden movement and that its occupant would be injured.
 {¶ 20} None of the above indicators are present in this matter. Here, the van appellant was being transported in had been specifically modified to accommodate passengers. Further, a public road or highway presents more occasion for sudden movements or sharp turns than does a private, gravel road. Finally, while there were no actual safety belts in this case, the inmates were able to hold onto the benches and the interior framework of the aluminum camper.
 {¶ 21} Accordingly, we find that the trial court's decision is not against the manifest weight of the evidence or contrary to law. Appellant's first, second, and third assignments are overruled.
 {¶ 22} In his fourth assignment of error, appellant asserts that the Court of Claims' judgment, which found ODRC not liable for the injury allegedly caused by a CO, is contrary to law and against the manifest weight of the evidence. Again, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.C.E. Morris Co., at syllabus. The magistrate heard testimony relating to the March 1999 incident from appellant and several prison officials. The testimony presents the following facts.
 {¶ 23} Earlier in the day, appellant was transferred from the infirmary back to the work camp. Appellant testified that he was still wearing his orange "transport" jumpsuit and was talking to a friend in the friend's dormitory when CO Lindsey approached him from behind and placed a sharp object, "a rusty pocket knife," against his neck. When CO Lindsey grabbed him, appellant moved his neck and felt a slight puncture. Appellant realized he had been cut when he felt a burning sensation from sweat entering the wound. Appellant called his mother to tell her about the incident and then talked to a sergeant.
 {¶ 24} CO Lindsey testified that he had seen appellant earlier in the day and had asked him to change from his transport suit to his brown uniform. When the incident occurred, he was inspecting cells in appellant's friend's area when he approached appellant. He stated that he asked appellant when he was going to change into his brown uniform, to which appellant responded, "cut it out, Lindsey." CO Lindsey stated that he jokingly replied that he would cut it out and placed his hands on appellant's shoulders. When appellant turned his neck, the pen CO Lindsey was holding poked appellant. CO Lindsey continued his rounds, and, 10 to 15 minutes later, an inmate came out of the showers saying that appellant was telling all the inmates in the showers that CO Lindsey had cut him with a knife. At that time, CO Lindsey called his lieutenant, Lieutenant Simmons, to tell him about the incident.
 {¶ 25} Sergeant Barry Baker testified next. According to Sergeant Baker, appellant told him several days later that an officer had stabbed him in the neck while they were horseplaying. Appellant also told him that he did not think the officer, who he would not identify, meant to harm him. Sergeant Arthur Wash also testified that appellant complained of being stabbed in the neck by an officer. However, when he looked at appellant's neck, he did not see anything.
 {¶ 26} Lieutenant David Simmons testified that he received a call from CO Lindsey, who informed him of the day's event. Lieutenant Simmons stated that, at one point, he was sitting across a desk from appellant, but did not see any marks on appellant's neck. He admitted that after a picture was taken, a small mark could be seen. The mark looked like a small razor burn with no indication that the neck was actually punctured.
 {¶ 27} Lieutenant Simmons also testified that he conducted an investigatory interview with CO Lindsey about the incident. CO Lindsey testified that the incident led to a disciplinary hearing and an internal affairs investigation. CO Lindsey also admitted that he was disciplined and that it was inappropriate to put his hands on an inmate's shoulders.
 {¶ 28} The magistrate found CO Lindsey's testimony to be "quite credible," and that appellant failed to prove any negligence. The magistrate noted that the evidence showed that appellant was accidentally poked with a ballpoint pen, not injured with a rusty pocket knife. In addition, appellant had, at most, a small abrasion and had not been punctured.
 {¶ 29} We find that some competent, credible evidence supports the magistrate's decision. If the fact finder believes CO Lindsey's testimony, it is apparent that the incident was an unfortunate accident resulting from his decision to put his hands on appellant's shoulders. When combined, the testimony of the prison officers indicates that, at most, a small mark resembling a razor burn was on appellant's neck. Further, Sergeant Baker's testimony indicates that appellant did not believe that whatever contact had occurred was intentional, but had occurred while he engaged in horseplay. The mere fact that CO Lindsey was disciplined does not automatically lead to a finding of negligence.Williams v. Ohio Dept. of Rehab. Corr. (1993), 67 Ohio Misc.2d 1, 3
("A breach of internal regulations in itself does not constitute negligence."). There are a myriad of reasons for which an officer could be disciplined; and, CO Lindsey did return to his post. Appellant's fourth assignment of error is overruled.
 {¶ 30} Based on the foregoing, we overrule appellant's four assignments of error and affirm the judgment of the Ohio Court of Claims.
Judgment affirmed.
Petree and French, JJ., concur.
[1] Appellant has since been released from prison.
[2] Though the two Woods cases are unrelated, the court will refer to these decisions as Woods I and Woods II, respectively, throughout this decision.