[Cite as *Lloyd v. Ohio Dept. of Rehab. & Corr.*, 2016-Ohio-1255.]

| | |
|---|---|
| DAMON LLOYD | Case No. 2014-00844 |
| Plaintiff | Magistrate Robert Van Schoyck |
| v. | <u>DECISION OF THE MAGISTRATE</u> |
| OHIO DEPARTMENT OF REHABILITATION AND CORRECTION | |
| Defendant | |

{¶1} Plaintiff, an inmate in the custody and control of defendant at the Chillicothe Correctional Institution (CCI), brought this action for negligence arising from an accident in which he was injured while adjusting a window in his dormitory on February 19, 2014. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶2} At trial, plaintiff testified that he is incarcerated on a murder conviction and that he was transferred to CCI from another prison about five years ago. Plaintiff testified that at the time of the accident, he was assigned to the F-2 Dormitory, which he described as a large, two-story building with bunk beds arranged in an open floor plan. Plaintiff testified that he was assigned to a bottom bunk along the west wall of the first floor.

{¶3} Plaintiff testified that there were approximately 30 windows in total on the first floor of the building. As plaintiff described, the windows could be raised and lowered vertically, and they were an older style of window with a counterweight system built into the frame. But, plaintiff explained that in most of the windows the counterweight systems no longer worked, meaning that when the windows were raised they would not stay open on their own. According to plaintiff, the windows were large

and the sections that could be raised and lowered were heavy, weighing about 70 to 80 pounds.

{¶4} Plaintiff related that in this dormitory and in other housing units where he had been assigned at CCI previously, where windows would not stay open on their own, inmates would often remove a cup from the chow hall and set it in the windowsill to prop the window open, or they would hold the window up with an improvised hook and string system. As plaintiff explained, the hook and string system involved removing the nylon drawstring from one of the laundry bags that were issued to inmates, removing a metal hook from the spring frame of a bunk bed, and tying the hook to one end of the string; the other end of the string would be fastened to the top of the window frame, and then the hook would be fastened to the bottom of the window to hold the window up. Plaintiff testified that he never heard any CCI staff member tell inmates not to use the hook and string system, but he stated that the staff did come through periodically and retrieve any chow hall cups that were on the windowsills, and he also stated that an inmate could receive a disciplinary ticket for removing a cup from the chow hall.

{¶5} Plaintiff testified that the dormitory did not have air conditioning and that it was common for inmates to open the windows to circulate air. Plaintiff also stated that the building was equipped with a radiant heat system and that there was a radiator along the wall near his bed. According to plaintiff, the weather was unseasonably warm on the morning of February 19, 2014, the radiators were on, and it was hot inside the building, so he and a few other inmates opened some of the windows. Plaintiff testified that when he opened the window near his bed, he used an existing hook and string device to hold it open. Plaintiff, who stated that he served as a construction millwright before going to prison, testified that he knew the window was old and did not have a functioning counterweight system, and he also testified that he had not been directed by anyone to adjust the window, nor did he seek anyone's help in adjusting the window. Plaintiff stated that he concluded it was too drafty to have the window all the way open,

so he decided to attach two more hooks and strings onto the original hook and string so that he could leave the window open at a lower height.  It was plaintiff's testimony that when he was tying one of the hooks into one of the strings, the original string "snapped," causing the hook he was holding to cut his right index finger to the bone and pierce his right middle finger.

{¶6} Plaintiff recalled that he then went to see Corrections Officer Bryan Netter, who was on duty in the building at that time.  According to plaintiff, Netter was helpful and arranged for him to get to the medical department.  Plaintiff stated that an inmate also got a bag of ice for him quickly.  Plaintiff testified that he was examined promptly by a nurse in the medical department, and that he was transported to an outside hospital for treatment.

{¶7} Inmate Douglas Johnson testified that at the time of the accident he was assigned to the top bunk in the bed next to plaintiff's bed.  Johnson stated that he did not actually witness the accident, but he had seen plaintiff attempting to adjust the window just before it happened, apparently by making an extension to the existing hook and string system.  Johnson recalled that plaintiff yelled when the accident occurred and that he got up and helped lift the window, which he described as being very heavy, off of plaintiff's fingers.

{¶8} Johnson stated that he had been assigned to the F-2 Dormitory since the beginning of 2013 and had seen other inmates there use the hook and string system to hold windows open, and he stated that he never heard corrections officers tell inmates not to do so.  Johnson testified that the counterweights in nearly all the windows in the dormitory no longer worked, and that inmates had put the hook and string devices on about three-quarters of the windows.

{¶9} James David Lethgo testified by way of deposition.[1]  (Plaintiff's Exhibit 1.) Lethgo testified that when the accident occurred he was an inmate at CCI and was

---

[1]The objection raised in the deposition transcript at page 9 is OVERRULED.

assigned to the bottom bunk in the bed next to plaintiff's bed. As Lethgo recalled, it was unseasonably warm the day of the accident, the heat was on in the dormitory, and inmates had consequently opened some of the windows. Lethgo related that plaintiff was trying to tie an extension onto the existing hook and string system but one of the strings broke and the window slammed shut. Lethgo testified that Corrections Officer Netter summoned medical attention and the medical staff responded "as quick as it could."

{¶10} Lethgo stated that he moved into the F-2 Dormitory in April 2010 and that, in his experience, it was common for inmates to adjust the windows as they saw fit. Lethgo stated that the windows generally would not stay open on their own, and that inmates would improvise different ways of adjusting the windows, mostly using cups to prop windows open or using the hook and string system. Lethgo testified that corrections officers routinely made rounds through the dormitory and he never heard them say anything about the various devices inmates were using.

{¶11} Corrections Officer Bryan Netter testified that he is employed with defendant at CCI and that when the accident occurred he was on duty at his regular post in the F-2 Dormitory, which houses as many as 304 inmates. According to Netter, he did not order plaintiff to adjust the window, he was not aware that plaintiff was attempting to adjust the window, and he did not see the accident. Rather, Netter stated that at around 10:05 a.m. he was conversing with another corrections officer when a loud noise rang out, at which point the officers looked at each other. Netter stated that plaintiff came to the desk within a minute's time, obviously in pain, with a hook from a bed spring sticking out of his finger, and he told Netter what happened. Netter testified that he called the medical department and that a Nurse Peters responded to the scene in a golf cart less than four minutes later. Netter recalled that Peters looked at plaintiff's finger, wrapped the finger up, escorted plaintiff to the golf cart, and drove plaintiff to the

infirmary.  Netter stated that he prepared an Incident Report afterward.  (Defendant's Exhibit A.)

{¶12} Netter testified that there are fans mounted on the walls throughout the dormitory to circulate air and that there are fans positioned at certain points on the floor for that purpose as well.  Netter stated that there are radiators positioned along the walls at every other bed, and that each radiator has a control valve with which inmates can regulate the heat.  Netter acknowledged that the windows in the dormitory are old and that some of them will not stay open on their own.  Netter testified that inmates have used nylon cord or string to hold some of the windows up, and he stated that he is not aware of any staff member telling inmates that they could not do so.

{¶13} "To recover on a negligence claim, a plaintiff must prove by a preponderance of the evidence (1) that a defendant owed the plaintiff a duty, (2) that a defendant breached that duty, and (3) that the breach of the duty proximately caused a plaintiff's injury." *Ford v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 05AP-357, 2006-Ohio-2531, ¶ 10.

{¶14} "In the context of a custodial relationship between the state and its prisoners, the state owes a common-law duty of reasonable care and protection from unreasonable risks." *Jenkins v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 12AP-787, 2013-Ohio-5106, ¶ 8.  "This duty does not, however, make ODRC the insurer of inmate safety." *Kordelewski v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 00AP-1109 (June 21, 2001).  "Reasonable care is that degree of caution and foresight an ordinarily prudent person would employ in similar circumstances, and includes the duty to exercise reasonable care to prevent an inmate from being injured by a dangerous condition about which the state knows or should know." *McElfresh v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 04AP-177, 2004-Ohio-5545, ¶ 16. "The inmate also bears a responsibility 'to use reasonable care to ensure his own safety.'" *Gumins v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 10AP-941,

2011-Ohio-3314, ¶ 20, quoting *Macklin v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 01AP-293, 2002-Ohio-5069, ¶ 21.

{¶15} Under the "open and obvious" doctrine, an owner or occupier of property is under no duty to warn of dangers that are so apparent that persons on the premises may be reasonably expected to discover them and take appropriate measures to protect themselves. *Williams v. Ohio Dept. of Rehab. & Corr.,* 10th Dist. Franklin No. 04AP-1193, 2005-Ohio-2669, ¶ 8. "The open and obvious doctrine, where warranted, may be applied in actions against ODRC with the result that ODRC would owe no duty to an injured inmate." *Jenkins v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 12AP-787, 2013-Ohio-5106, ¶ 10.

{¶16} Upon review of the evidence presented at trial, the magistrate finds as follows. The first floor of the F-2 Dormitory where plaintiff lived at the time of the accident has older-style windows with counterweight systems built into the frames, but those systems no longer functioned properly in many of the windows, meaning that those windows would not stay in a raised position on their own. Inmates living in the dormitory adjusted windows on their own at times, and with respect to the windows in which the counterweight system no longer worked, inmates typically would either prop the window up with a cup or other object, or use a hook and string system that involved removing the nylon drawstring from a state-issued laundry bag, removing a metal hook from the spring frame of a bunk bed, and tying the hook to one end of the string; the other end of the string would be fastened to the top of the window frame, and then the hook would be fastened to the bottom of window to hold the window up.

{¶17} On the morning of February 19, 2014, plaintiff opened a window near his bed on the first floor of the F-2 Dormitory at CCI. The counterweight system in that window did not function properly, so plaintiff used an existing hook and string to hold the window up. Plaintiff decided, however, that the window was creating too much draft at the height to which he had it open. Plaintiff attempted to attach two more strings and

hooks in order to lower the window and allow in less air.  Somehow, whether it was a string that broke or otherwise, the system of multiple strings and hooks that plaintiff was trying to use failed.  Plaintiff, who at the time was holding one of the hooks in his right hand and had his left hand under the window, was injured when the window fell on the left hand and the hook cut the index finger and punctured the middle finger of the right hand.

{¶18} The magistrate finds that the danger presented by the window and the hook and string system were open and obvious conditions.  The window was heavy and would not stay up on its own, and the danger associated with putting one's hand under the window was plainly apparent.  *See Ortiz v. Chillicothe Corr. Inst.*, Ct. of Cl. No. 2004-10957-AD, 2005-Ohio-3210, ¶ 15 (fingers caught under window); *Rigdon v. Great Miami Valley YMCA*, 12th Dist. Butler No. CA2006-06-155, 2007-Ohio-1648, ¶ 23 (fingers caught in door with sharp edges).  The strings that plaintiff tried to use to hold the window open were only designed as closures for inmate laundry bags, and the danger that they might prove inadequate to hold up a window that by plaintiff's estimate weighed 70 to 80 pounds is open and obvious.  Also, the hooks plaintiff used in conjunction with the strings, again being intended for an entirely different purpose, were designed with a sharp point that was easily observed.  *See Lambert v. Sack 'n Save, Inc.*, 4th Dist. Ross No. 12CA3319, 2012-Ohio-4686, ¶ 11 (sharp edge in the design of a shopping cart was open and obvious).

{¶19} Applying the open and obvious doctrine, the magistrate finds that defendant owed plaintiff no duty relative to the hazardous conditions upon which he was injured.  In the absence of such duty, defendant cannot be liable to plaintiff for his claim of negligence.

{¶20} The magistrate further finds that the sole proximate cause of plaintiff's injuries was his own negligence.  Plaintiff put his left hand under a heavy window that he knew would not stay up on its own.  With his right hand, plaintiff held the sharp hook

and tried to attach it to a string that was under significant tension from the weight of the heavy window, and he was using materials that were not designed for such purposes. No agent or employee of defendant ever told plaintiff to do these things; rather, plaintiff did so on his own volition and he did not ask anyone for help. Regardless of whether a staff member ever told plaintiff not to do such things, the danger in doing so was manifest. By putting his hands in a position that made him vulnerable to injury, plaintiff failed to exercise reasonable care for his own safety. *See Coach v. Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 97API04-516 (Aug. 28, 1997) (inmate at CCI was negligent when he "placed his thumbs in a vulnerable position under the window."). While it was argued that plaintiff's actions were reasonable in light of the temperature in the dormitory, plaintiff had the ability to adjust the radiator, the dormitory was equipped with fans, the indoor temperature on that winter morning was in no way shown to pose a danger to plaintiff, and even if plaintiff felt the temperature did pose a danger to him he failed to notify defendant. In short, plaintiff was injured by open and obvious hazards that he was negligent in failing to avoid.

{¶21} Finally, with respect to the allegation in the complaint that defendant was "negligent in delaying medical treatment for Plaintiff's injuries," defendant moved for partial dismissal under Civ.R. 41(B)(2) after plaintiff finished the presentation of his evidence. The motion was GRANTED on the record.

{¶22} Based on the foregoing, the magistrate finds that plaintiff failed to prove his claims by a preponderance of the evidence. Accordingly, judgment is recommended in favor of defendant.

{¶23} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of*

*any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

 

ROBERT VAN SCHOYCK
Magistrate

cc:

Richard F. Swope
6480 East Main Street, Suite 102
Reynoldsburg, Ohio 43068

Lee Ann Rabe
Lindsey M. Grant
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

**Filed February 18, 2016**
**Sent To S.C. Reporter 3/24/16**