[Cite as *Lloyd v. Ohio Dept. of Rehab. & Corr.*, 2017-Ohio-2942.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Damon Lloyd, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 16AP-499 |
| v. | : | (Ct. of Cl. No. 2014-00844) |
| Ohio Department of Rehabilitation and Correction, | : | (REGULAR CALENDAR) |
| | : | |
| Defendant-Appellee. | : | |
| | : | |

D E C I S I O N

Rendered on May 23, 2017

**On brief:** *Swope and Swope*, and *Richard F. Swope*, for appellant. **Argued:** *Richard F. Swope*.

**On brief:** *Michael DeWine*, Attorney General, *Lee Ann Rabe* and *Lindsey M. Grant*, for appellee. **Argued:** *Lee Ann Rabe*.

APPEAL from the Court of Claims of Ohio

TYACK, P.J.

{¶ 1} Plaintiff-appellant, Damon Lloyd, appeals a judgment of the Court of Claims of Ohio in favor of defendant-appellee, Ohio Department of Rehabilitation and Correction. Because the open and obvious doctrine does not apply and because the trial court should have engaged in a comparative-fault analysis, we reverse.

**FACTS AND PROCEDURAL BACKGROUND**

{¶ 2} Appellant is an inmate in the custody and control of appellee at the Chillicothe Correctional Institution ("CCI"). On February 19, 2014, appellant injured his right hand while adjusting the height of a window in the F-2 dormitory at CCI. There are approximately 30 large windows on the first floor of the F-2 dormitory. It is undisputed

that these windows are old. The windows are large and heavy, each weighing approximately 70 to 80 pounds. The windows were designed so that they could be raised and lowered vertically by a counterweight system built into the window frame. The counterweight system allowed the window to stay open at varying heights. However, on the day of appellant's injury, the counterweight system in a large percentage of windows in the F-2 dormitory were broken, thereby preventing the windows from staying open as designed.

{¶ 3} Inmates living in the F-2 dormitory adjusted the height of the windows with broken counterweight systems by propping them up with objects or by using an improvised hook and drawstring method. The hook and drawstring method involved an inmate removing the nylon drawstring from a laundry bag and removing a metal hook from the spring frame of the inmate's bunk bed. One end of the drawstring would be tied to the hook and the other end would be tied to the top of the window frame. An inmate would then place the hook under the window to hold it up. Appellant testified that inmates commonly used the hook and drawstring method to keep windows open and that prison officials were aware of this practice. Moreover, prison officials never instructed inmates to stop using the hook and drawstring method to keep windows open.

{¶ 4} On the morning of February 19, 2014, the weather was unseasonably warm and the dorm heat was on. As a result, it was hot inside the F-2 dormitory. Although there were some fans inside the F-2 dormitory, inmates often opened windows to let in fresh air and to help regulate the temperature.

{¶ 5} Appellant testified that the counterweight system on the window near his bed was broken. Therefore, when he opened the window, he used the improvised hook and drawstring method to hold the window open. However, on this particular day, the hook and drawstring method he was using raised the window higher than the conditions warranted. Appellant decided to lengthen the hook and drawstring by attaching additional hooks and drawstrings so that the window would remain open at lower heights. As he was tying one of the hooks onto one of the drawstrings, the original drawstring holding up the window broke. The window fell on his left hand and the hook he was holding cut the index finger and punctured the middle finger on his right hand. Appellant

further testified that to his knowledge the hook and drawstring method for holding a window up had not previously failed.

{¶ 6} Appellant filed a negligence suit against appellee seeking damages for his injuries. The trial court bifurcated the issues of liability and damages for purposes of trial, and the parties tried the liability portion of the case to a magistrate. In a decision dated February 18, 2016, the magistrate recommended that the trial court enter judgment in appellee's favor. The magistrate found that the danger presented by the window and the hook and drawstring method were open and obvious conditions. Therefore, appellee did not owe appellant any duty under the open and obvious doctrine. In addition, the magistrate found that appellant's own conduct was the sole proximate cause of his injuries.

{¶ 7} Appellant filed objections to the magistrate's decision. The trial court overruled appellant's objections, adopted the magistrate's decision, and entered judgment in favor of the appellee.

{¶ 8} Appellant now appeals to this court, assigning the following errors:

[1.] The trial court and the magistrate erred in ruling the open and obvious doctrine barred recovery.

[2.] The trial court and the magistrate erred in ruling exhibits, detailing the history of Chillicothe Correctional Institution, were not admissible.

[3.] The trial court and the magistrate erred in ruling plaintiff-appellant was negligent in using the only method available to secure fresh air in an overheated block.

[4.] The trial court and the magistrate erred in ruling defendant-appellee was not negligent in either repairing the windows in F-2 dormitory or in not directing inmates to cease using an unacceptable method to keep windows open to an acceptable level.

[5.] The decision of the magistrate is against the manifest weight of the evidence and contrary to law.

## LEGAL ANALYSIS

{¶ 9} In his first assignment of error, appellant contends that the trial court erred when it found the open and obvious doctrine barred his recovery in this case. We agree.

{¶ 10} To recover on a claim for negligence, a party must prove the existence of a duty, a breach of that duty, and an injury proximately caused by the breach. *Flagstar Bank, F.S.B. v. Airline Union's Mtge. Co.*, 128 Ohio St.3d 529, 2011-Ohio-1961, ¶ 19. In the context of a custodial relationship between the state and its prisoners, the state owes a common law duty of reasonable care and protection from unreasonable risks. *Jenkins v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 12AP-787, 2013-Ohio-5106, ¶ 8. "Reasonable care is that degree of caution and foresight an ordinarily prudent person would employ in similar circumstances, and includes the duty to exercise reasonable care to prevent an inmate from being injured by a dangerous condition about which the state knows or should know." *McElfresh v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 04AP-177, 2004-Ohio-5545, ¶ 16. Thus, a prison must exercise the degree of caution and foresight that an ordinarily reasonable and prudent person would employ under the same or similar circumstances. *Mussivand v. David*, 45 Ohio St.3d 314, 318 (1989); *Woods v. Ohio Dept. of Rehab. & Corr.*, 130 Ohio App.3d 742, 745 (10th Dist.1998).

{¶ 11} However, a prison is not an insurer of the safety of its inmates. *Franks v. Ohio Dept. of Rehab. & Corr.*, 195 Ohio App.3d 114, 2011-Ohio-2048 (10th Dist.), ¶ 13; *Clifton v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 06AP-677, 2007-Ohio-3791, ¶ 18. "The inmate also bears a responsibility 'to use reasonable care to ensure his own safety.' " *Gumins v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 10AP-941, 2011-Ohio-3314, ¶ 20, quoting *Macklin v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 01AP-293, 2002-Ohio-5069, ¶ 21. The extent of a prison's duty will vary with the circumstances. *Barnett v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 09AP-1186, 2010-Ohio-4737, ¶ 18; *McElfresh* at ¶ 16.

{¶ 12} A prison has no duty to protect an inmate from open and obvious hazards. *Jenkins* at ¶ 10. A hazard is open and obvious when it is "not hidden, concealed from view, or undiscoverable upon ordinary inspection." *Cordell v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 08AP-749, 2009-Ohio-1555, ¶ 10. If applicable, the open and obvious doctrine eliminates the duty otherwise owed by the prison for that particular hazard. *Jenkins* at ¶ 10.

{¶ 13} In this case, the magistrate found that there were approximately 30 windows in total on the first floor of the F-2 dormitory. The windows could be raised and

lowered vertically, and they were an older style of window with a counterweight system built into the frame.  However, in most of the windows, the counterweight system no longer worked.  Therefore, when the windows were raised they would not stay open on their own.  The windows were large and the sections that could be raised and lowered were heavy, weighing between 70 and 80 pounds.

{¶ 14} The magistrate further determined that when windows would not stay open on their own, inmates would often remove a cup from the chow hall and set it in the window seal to prop the window open, or they would hold the window up with an improvised hook and drawstring method.  Prison officials were aware that inmates were using the hook and drawstring method to keep windows open and did not prohibit inmates from using this method.  The F-2 dormitory did not have air conditioning and it was common for inmates to open the windows.  According to appellant, the weather was unseasonably warm on the date of the accident, the heat was on, and it was hot inside the building.  Therefore, appellant opened the window near his bed and used the hook and drawstring method to keep the window open.

{¶ 15} Although appellant used the drawstring from a laundry bag, in conjunction with a hook from a bed frame, to hold up the window, there is nothing in the record to establish that this was an open and obvious hazard.  Appellant testified that he was not aware the hook and drawstring method could fail, and the method was widely used by inmates in the dormitory to keep windows open.  Prison officials were aware that inmates used this method to keep windows open and they did not prohibit it.  Given these undisputed facts,  we conclude that the hook and drawstring method for keeping windows open did not constitute an open and obvious hazard.  Because the danger posed by the hook and drawstring method was not open and obvious, the trial court erred in applying the doctrine to bar appellant's claim.  Therefore, we sustain appellant's first assignment of error.

{¶ 16} In his third and fourth assignments of error, appellant contends that the trial court erred when it found that appellant was negligent for using the hook and drawstring method to keep the window open and that appellee was not negligent for failing to repair the counterweight system in the window and/or by failing to prohibit inmates from using the hook and drawstring system if it posed an unreasonable hazard.

{¶ 17} Because the trial court applied the open and obvious doctrine to eliminate the duty appellee otherwise would have owed to appellant, it did not engage in a comparative-fault analysis. The contributory fault of a plaintiff bars him from recovery if it exceeds the negligence of all other persons involved. R.C. 2315.33; *Gill v. Grafton Corr. Inst.*, 10th Dist. No. 10AP-1094, 2011-Ohio-4251, ¶ 28. Although noting certain facts, the trial court made no attempt to determine and allocate the degree of negligence between appellant and appellee. Nor does appellee present any argument in response to these assignments of error other than to argue that the open and obvious doctrine bars appellant's negligence claims—an argument we have rejected. The trial court does not address whether appellee's failure to repair the counterweight system, its failure to eliminate the need for inmates to open windows, and/or its failure to provide inmates a safer means to keep broken windows open, constitute negligence, and if so, how that degree of negligence compares with any negligence on the part of appellant for using the hook and drawstring method. Because the trial court failed to engage in a comparative negligence analysis, we sustain appellant's third and fourth assignments of error.

{¶ 18} Having sustained appellant's first, third, and fourth assignments of error, appellant's fifth assignment of error is rendered moot.

{¶ 19} In appellant's second assignment of error, he contends the trial court erred when it prohibited appellant from introducing two exhibits into evidence. We disagree.

{¶ 20} Appellant sought to introduce two documents, exhibits two and three, which describe the history of the federal prison system and the history of CCI. One document is a printout from the Wikepedia website and the other is from a website called www.Dr.TomO'Connor.com. Appellee objected to the documents on the basis of hearsay and the trial court sustained the objection. Appellant argues the documents were admissible under Evid.R. 803(8) and (20). We disagree.

{¶ 21} Evid.R. 803(8) creates an exception to the hearsay rule for "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report." Neither of the documents proffered into evidence by appellant qualify under Evid.R. 803(8) because they are not a report or record from a public agency.

{¶ 22} Evid.R. 803(20) allows an exception to the hearsay rule for evidence reflecting "[r]eputation in a community, arising before the controversy, as to boundaries of or customs affecting lands in the community, and reputation as to events of general history important to the community or state or nation in which located."  This rule is inapplicable to the documents in question because they do not establish reputation.  We also note that appellant was not prejudiced in any event because, to the extent appellant sought to introduce these documents to establish that CCI was an old building, the magistrate took judicial notice of that fact.  For all these reasons, we overrule appellant's second assignment error.

{¶ 23} For the foregoing reasons, we sustain appellant's first, third, and fourth assignments of error.  We overrule appellant's second assignment of error, and find appellant's fifth assignment error moot.  Therefore, we reverse the judgment of the Court of Claims of Ohio.

*Judgment reversed.*

BRUNNER, J., concurs.
KLATT, J., dissents.

KLATT, J., dissenting.

{¶ 24}  Because I would affirm the trial court's judgment, I respectfully dissent.

{¶ 25}  Contrary to the majority decision, I do not believe the trial court erred when it applied the open and obvious doctrine to bar appellant's claim. In my view, the hazard associated with using a laundry bag drawstring and a bed frame hook as an improvised method to keep a large heavy window raised is an open and obvious hazard.

{¶ 26}  Moreover, even if the open and obvious doctrine did not apply, the trial court accepted the magistrate's factual determination that appellant's conduct was the sole proximate cause of his injuries.  Based upon this finding, there was no need for the trial court to undertake a comparative-fault analysis.

{¶ 27}  For these reasons, I respectfully dissent.