[Cite as *Lloyd v. Dept. of Rehab. & Corr.*, 2017-Ohio-9396.]

| | |
|---|---|
| DAMON LLOYD | Case No. 2014-00844 |
| Plaintiff | Magistrate Robert Van Schoyck |
| v. | DECISION OF THE MAGISTRATE |
| OHIO DEPARTMENT OF REHABILITATION AND CORRECTION | |
| Defendant | |

{¶1} Plaintiff, an inmate in the custody and control of defendant, brought this action for negligence arising out of a February 19, 2014 accident in which he was injured while adjusting a window in his dormitory at the Chillicothe Correctional Institution (CCI). The issues of liability and damages were bifurcated and the case proceeded to trial before the undersigned magistrate on the issue of liability. The magistrate recommended judgment in favor of defendant. The court adopted the magistrate's decision and rendered judgment accordingly.

{¶2} Plaintiff appealed and the Tenth District Court of Appeals issued a decision on May 23, 2017, reversing the judgment and remanding the matter for further proceedings. *Lloyd v. Ohio Dept. of Rehab. & Corr.,* 10th Dist. Franklin No. 16AP-499, 2017-Ohio-2942. The court of appeals held that the court of claims erred in applying the open and obvious doctrine to bar plaintiff's claim, and that the court should have engaged in a comparative negligence analysis. Upon remand, the parties agreed to file briefs setting forth their arguments on the issue of liability, including the issue of comparative negligence, whereupon the case was resubmitted for decision on the issue of liability based upon the record of the trial held on October 21, 2015.

{¶3} The trial testimony was summarized in the original decision of the magistrate as follows:

{¶2} At trial, plaintiff testified that he is incarcerated on a murder conviction and that he was transferred to CCI from another prison about five years ago. Plaintiff testified that at the time of the accident, he was assigned to the F-2 Dormitory, which he described as a large, two-story building with bunk beds arranged in an open floor plan. Plaintiff testified that he was assigned to a bottom bunk along the west wall of the first floor.

{¶3} Plaintiff testified that there were approximately 30 windows in total on the first floor of the building. As plaintiff described, the windows could be raised and lowered vertically, and they were an older style of window with a counterweight system built into the frame. But, plaintiff explained that in most of the windows the counterweight systems no longer worked, meaning that when the windows were raised they would not stay open on their own. According to plaintiff, the windows were large and the sections that could be raised and lowered were heavy, weighing about 70 to 80 pounds.

{¶4} Plaintiff related that in this dormitory and in other housing units where he had been assigned at CCI previously, where windows would not stay open on their own, inmates would often remove a cup from the chow hall and set it in the windowsill to prop the window open, or they would hold the window up with an improvised hook and string system. As plaintiff explained, the hook and string system involved removing the nylon drawstring from one of the laundry bags that were issued to inmates, removing a metal hook from the spring frame of a bunk bed, and tying the hook to one end of the string; the other end of the string would be fastened to the top of the window frame, and then the hook would be fastened to the bottom of the window to hold the window up. Plaintiff testified that he never heard any CCI staff member tell inmates not to use the hook and string system, but he stated that the staff did come through periodically and retrieve any chow hall cups that were on the windowsills, and he also stated that an inmate could receive a disciplinary ticket for removing a cup from the chow hall.

{¶5} Plaintiff testified that the dormitory did not have air conditioning and that it was common for inmates to open the windows to circulate air. Plaintiff also stated that the building was equipped with a radiant heat system and that there was a radiator along the wall near his bed. According to plaintiff, the weather was unseasonably warm on the morning of February 19, 2014, the radiators were on, and it was hot inside the

building, so he and a few other inmates opened some of the windows. Plaintiff testified that when he opened the window near his bed, he used an existing hook and string device to hold it open. Plaintiff, who stated that he served as a construction millwright before going to prison, testified that he knew the window was old and did not have a functioning counterweight system, and he also testified that he had not been directed by anyone to adjust the window, nor did he seek anyone's help in adjusting the window. Plaintiff stated that he concluded it was too drafty to have the window all the way open, so he decided to attach two more hooks and strings onto the original hook and string so that he could leave the window open at a lower height. It was plaintiff's testimony that when he was tying one of the hooks into one of the strings, the original string 'snapped,' causing the hook he was holding to cut his right index finger to the bone and pierce his right middle finger.

{¶6} Plaintiff recalled that he then went to see Corrections Officer Bryan Netter, who was on duty in the building at that time. According to plaintiff, Netter was helpful and arranged for him to get to the medical department. Plaintiff stated that an inmate also got a bag of ice for him quickly. Plaintiff testified that he was examined promptly by a nurse in the medical department, and that he was transported to an outside hospital for treatment.

{¶7} Inmate Douglas Johnson testified that at the time of the accident he was assigned to the top bunk in the bed next to plaintiff's bed. Johnson stated that he did not actually witness the accident, but he had seen plaintiff attempting to adjust the window just before it happened, apparently by making an extension to the existing hook and string system. Johnson recalled that plaintiff yelled when the accident occurred and that he got up and helped lift the window, which he described as being very heavy, off of plaintiff's fingers.

{¶8} Johnson stated that he had been assigned to the F-2 Dormitory since the beginning of 2013 and had seen other inmates there use the hook and string system to hold windows open, and he stated that he never heard corrections officers tell inmates not to do so. Johnson testified that the counterweights in nearly all the windows in the dormitory no longer worked, and that inmates had put the hook and string devices on about three-quarters of the windows.

{¶9} James David Lethgo testified by way of deposition.[1] (Plaintiff's Exhibit 1.) Lethgo testified that when the accident occurred he was an inmate at CCI and was assigned to the bottom bunk in the bed next to plaintiff's bed. As Lethgo recalled, it was unseasonably warm the day of the accident, the heat was on in the dormitory, and inmates had consequently opened some of the windows. Lethgo related that plaintiff was trying to tie an extension onto the existing hook and string system but one of the strings broke and the window slammed shut. Lethgo testified that Corrections Officer Netter summoned medical attention and the medical staff responded 'as quick as it could.'

{¶10} Lethgo stated that he moved into the F-2 Dormitory in April 2010 and that, in his experience, it was common for inmates to adjust the windows as they saw fit. Lethgo stated that the windows generally would not stay open on their own, and that inmates would improvise different ways of adjusting the windows, mostly using cups to prop windows open or using the hook and string system. Lethgo testified that corrections officers routinely made rounds through the dormitory and he never heard them say anything about the various devices inmates were using.

{¶11} Corrections Officer Bryan Netter testified that he is employed with defendant at CCI and that when the accident occurred he was on duty at his regular post in the F-2 Dormitory, which houses as many as 304 inmates. According to Netter, he did not order plaintiff to adjust the window, he was not aware that plaintiff was attempting to adjust the window, and he did not see the accident. Rather, Netter stated that at around 10:05 a.m. he was conversing with another corrections officer when a loud noise rang out, at which point the officers looked at each other. Netter stated that plaintiff came to the desk within a minute's time, obviously in pain, with a hook from a bed spring sticking out of his finger, and he told Netter what happened. Netter testified that he called the medical department and that a Nurse Peters responded to the scene in a golf cart less than four minutes later. Netter recalled that Peters looked at plaintiff's finger, wrapped the finger up, escorted plaintiff to the golf cart, and drove plaintiff to the infirmary. Netter stated that he prepared an Incident Report afterward. (Defendant's Exhibit A.)

---

[1]The objection raised in the deposition transcript at page 9 is OVERRULED.

{¶12} Netter testified that there are fans mounted on the walls throughout the dormitory to circulate air and that there are fans positioned at certain points on the floor for that purpose as well. Netter stated that there are radiators positioned along the walls at every other bed, and that each radiator has a control valve with which inmates can regulate the heat. Netter acknowledged that the windows in the dormitory are old and that some of them will not stay open on their own. Netter testified that inmates have used nylon cord or string to hold some of the windows up, and he stated that he is not aware of any staff member telling inmates that they could not do so.

*Lloyd v. Ohio Dept. of Rehab. & Corr.*, Ct. of Cl. No. 2014-00844, 2016-Ohio-1255, ¶ 2-12.

{¶4} The original decision of the magistrate set forth the following factual findings, which the magistrate adheres to in this decision:

{¶16} Upon review of the evidence presented at trial, the magistrate finds as follows. The first floor of the F-2 Dormitory where plaintiff lived at the time of the accident has older-style windows with counterweight systems built into the frames, but those systems no longer functioned properly in many of the windows, meaning that those windows would not stay in a raised position on their own. Inmates living in the dormitory adjusted windows on their own at times, and with respect to the windows in which the counterweight system no longer worked, inmates typically would either prop the window up with a cup or other object, or use a hook and string system that involved removing the nylon drawstring from a state-issued laundry bag, removing a metal hook from the spring frame of a bunk bed, and tying the hook to one end of the string; the other end of the string would be fastened to the top of the window frame, and then the hook would be fastened to the bottom of window to hold the window up.

{¶17} On the morning of February 19, 2014, plaintiff opened a window near his bed on the first floor of the F-2 Dormitory at CCI. The counterweight system in that window did not function properly, so plaintiff used an existing hook and string to hold the window up. Plaintiff decided, however, that the window was creating too much draft at the height to which he had it open. Plaintiff attempted to attach two more strings and hooks in order to lower the window and allow in less air. Somehow, whether it was a string that broke or otherwise, the system of multiple

strings and hooks that plaintiff was trying to use failed. Plaintiff, who at the time was holding one of the hooks in his right hand and had his left hand under the window, was injured when the window fell on the left hand and the hook cut the index finger and punctured the middle finger of the right hand.

*Id.* at ¶ 16-17.

{¶5} The findings from the original decision of the magistrate went on to provide "that the danger presented by the window and the hook and string system were open and obvious conditions" for which defendant owed no duty to protect plaintiff. *Id.* at ¶ 18. The court of appeals determined, however, that "[a]though appellant used the drawstring from a laundry bag, in conjunction with a hook from a bed frame, to hold up the window, there is nothing in the record to establish that this was an open and obvious hazard. * * * Because the danger posed by the hook and drawstring method was not open and obvious, the trial court erred in applying the doctrine to bar appellant's claim." *Lloyd*, 10th Dist. Franklin No. 16AP-499, 2017-Ohio-2942, at ¶ 15. Having held that the hazard was not open and obvious, the court of appeals then instructed this court, upon remand, to engage in a comparative negligence analysis, weighing any negligence on the part of plaintiff with any negligence on the part of defendant.

{¶6} "To recover on a negligence claim, a plaintiff must prove by a preponderance of the evidence (1) that a defendant owed the plaintiff a duty, (2) that a defendant breached that duty, and (3) that the breach of the duty proximately caused a plaintiff's injury." *Ford v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 05AP-357, 2006-Ohio-2531, ¶ 10.

{¶7} "In the context of a custodial relationship between the state and its prisoners, the state owes a common-law duty of reasonable care and protection from unreasonable risks." *Jenkins v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 12AP-787, 2013-Ohio-5106, ¶ 8. "This duty does not, however, make ODRC the insurer of inmate safety." *Kordelewski v. Ohio Dept. of Rehab. & Corr.*, 10th Dist.

Franklin No. 00AP-1109 (June 21, 2001). "The inmate also bears a responsibility 'to use reasonable care to ensure his own safety.'" *Gumins v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 10AP-941, 2011-Ohio-3314, ¶ 20, quoting *Macklin v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 01AP-293, 2002-Ohio-5069, ¶ 21.

{¶8} "Reasonable care is that degree of caution and foresight an ordinarily prudent person would employ in similar circumstances, and includes the duty to exercise reasonable care to prevent an inmate from being injured by a dangerous condition about which the state knows or should know." *McElfresh v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 04AP-177, 2004-Ohio-5545, ¶ 16. "A property owner can only be found liable for known dangerous conditions or conditions that pose reasonably foreseeable dangers." *Horton v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 05AP-198, 2005-Ohio-4785, ¶ 14, citing *Perry v. Eastgreen Realty Co.*, 53 Ohio St.2d 51, 52 (1978). "'The test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act.'" *Quaye v. N. Mkt. Dev. Auth.*, 10th Dist. Franklin No. 15AP-1102, 2017-Ohio-7412, ¶ 22, quoting *Menifee v. Ohio Welding Prods.*, 15 Ohio St.3d 75, 77 (1984).

{¶9} "Under the comparative negligence statute, the factfinder apportions the percentage of each party's negligence that proximately caused the plaintiff's damages. R.C. 2315.19(B). A plaintiff may recover where his contributory negligence is equal to or less than the combined negligence of all the defendants. R.C. 2315.19(A)(2)." *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 646 (1992). "While difficult to define, proximate cause is generally established where an original act is wrongful or negligent and, in a natural and continuous sequence, produces a result that would not have taken place without the act." *Whiting v. Ohio Dept. of Mental Health*, 141 Ohio App.3d 198, 202 (10th Dist.2001). "'Proximate causation' is described as 'some reasonable connection between the act or omission of the defendant and the damage

the plaintiff has suffered.'"   *Marsh v. Heartland Behavioral Health Ctr.*, 10th Dist. Franklin No. 09AP-630, 2010-Ohio-1380, ¶ 40, quoting Prosser & Keeton, *The Law of Torts*, Section 41, 263 (5th Ed.1984).  While the connection between a defendant's act or omission and a plaintiff's injury may be broken by an intervening cause, that intervening cause must not have been foreseeable by the defendant.  *Marsh* at ¶ 40-42.  "'It is not necessary that the defendant should have anticipated the particular injury.  It is sufficient that his act is likely to result in an injury to some one.'"  *Harper v. Lefkowitz*, 10th Dist. Franklin Nos. 09AP-1090 & 09AP-1116, 2010-Ohio-6527, ¶ 27, quoting *Mudrich v. Std. Oil Co.*, 153 Ohio St.31, 39 (1950); *see also Zachariah v. Roby*, 178 Ohio App.3d 471, 2008-Ohio-4832, ¶ 44 (10th Dist.) ("The injury must have been reasonably foreseeable; not that the defendant had to anticipate the particular injury that occurred, just that it could be reasonably anticipated that some type of injury would occur from the negligent act.").

{¶10} Applying the foregoing standards, the magistrate finds the following. Defendant had notice of the windows in plaintiff's dormitory not staying up on their own. In light of the circumstances in which defendant did not repair the windows, provide some other reasonably safe mechanism for inmates to prop or hold up the windows, secure the windows in a closed position to prevent inmates from opening them, or warn inmates not to open them, all while knowing of the inmates' extensive reliance on opening and closing the windows to ventilate and regulate the indoor climate, it was reasonably foreseeable that inmates would improvise and use what limited property they might possess or could appropriate from state property to hold the windows up, and indeed prison staff knew that inmates were doing so.  It was also reasonably foreseeable that such jury-rigged, unsuited means of holding up these large heavy windows would prove inadequate and fail, and result in injury.  It is apparent that inmates would not have been using the makeshift means of holding up windows if not for defendant's acts or omissions relative to the windows.  Even though there is no

evidence that inmates had been injured using the hook and string system before, and whether or not defendant anticipated the precise manner of injury to plaintiff, defendant could reasonably anticipate under the surrounding circumstances of this particular case that some type of injury would occur. Defendant's acts or omissions relative to the windows set in motion natural and probable events that were foreseeable and plaintiff was injured as a result. By failing to take reasonable precaution to prevent such harm, defendant breached its duty of care, and, as a proximate result of defendant's negligence, plaintiff was injured.

{¶11} In terms of comparative fault, any possible negligence on the part of plaintiff is outweighed by that of defendant. Given the court of appeals' determination that the danger in using the hook and string system to hold up the window was not open and obvious, it follows that the danger was not one that plaintiff should have discerned through the exercise of ordinary care. *See McConnell v. Margello,* 10th Dist. Franklin No. 06AP-1235, 2007-Ohio-4860, ¶ 10 ("Open-and-obvious hazards are those hazards that are neither hidden nor concealed from view and are discoverable by ordinary inspection."). Furthermore, plaintiff knew that the hook and string system was used throughout CCI and was allowed or at least tolerated by prison staff, he had no knowledge of other inmates being injured as a result of using it nor had he been injured himself, he was not warned that it was dangerous, he used the window for its ordinary purpose, and he apparently gave due attention when adjusting it. Under the circumstances, there can be no fault attributed to plaintiff for failing to appreciate the danger. Although the original decision of the magistrate found that plaintiff was negligent and that this was the sole proximate cause of his injuries, and defendant argues upon remand that those findings should be reaffirmed, those findings were predicated upon the application of the open and obvious doctrine (i.e., that defendant owed no duty and that plaintiff should have appreciated the danger), which were determined by the court of appeals to have been in error.

{¶12} Based on the foregoing, the magistrate finds that plaintiff has proven his claim by a preponderance of the evidence. Accordingly, judgment is recommended in favor of plaintiff.

{¶13} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
ROBERT VAN SCHOYCK
Magistrate

cc:

Richard F. Swope
6480 East Main Street, Suite 102
Reynoldsburg, Ohio 43068

Lee Ann Rabe
Lindsey M. Grant
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

**Filed December 22, 2017**
**Sent to S.C. Reporter 1/5/18**